(28 App. Div. 292.)

ESMOND v. SEELEY et al.

(Supreme Court. Appellate Division, First Department. April 15, 1898.)

1. DIRECTING VERDICT.

Plaintiff effected a sale to the defendants, for $100,000, of certain real property owned by one M., and believed to be valuable for its mineral products. He then received from M. an order on defendants to pay plaintiff $10,-000, on account of the purchase price, which order they accepted. In an action to recover thereon, the defense was that the actual agreement as to the $10,000 contemplated no cash payment, but merely a credit of the amount to plaintiff's account in a business to be established by the parties on the land. *Held,* that the evidence was so clear and convincing that no reasonable mind could come to any other conclusion than that the defense was fully established, and that, therefore, the direction of a verdict for defendants was proper.

2. CONTRACT—CONSIDERATION.

It also clearly appeared that while plaintiff represented to defendants, in negotiating the sale, that he was acting as a partner with them, or at least as their agent to buy the land, and that his only interest was an agreed share in the business to be established by him and them, he was in fact representing the owner, under an agreement for a 10 per cent. commission. *Held* that, as they were entitled to regard the $10,000 as an asset of the partnership, an agreement to pay it to plaintiff, even if made, would have been without consideration.

Appeal from trial term.

Action by Ernest R. Esmond against George H. Seeley and Nathan Seeley. From a judgment on a verdict directed by the court, plaintiff appeals. Affirmed.

The complaint, which was verified on May 27, 1894, alleges that in May, 1888, the plaintiff negotiated for one Mallory a sale to the defendants, who were copartners, of a tract of land in Mystic, Conn., for the sum of $100,000; that the said Mallory agreed to pay him for such services the sum of $10,000, and paid the same by giving to the plaintiff a written order for said sum of $10,000, directed to the defendants, and thereby required them to pay the plaintiff that sum, and deduct it from the purchase price of the premises; that the defendants duly accepted the said order in writing, and agreed to pay the plaintiff the said sum, part in cash, and the balance in four annual payments; and that no part thereof has been paid except the sum of $450. The defendants, by their answer, admit that the plaintiff called the defendants' attention to the land, and undertook to act for them in the transaction, and that they agreed to purchase it for $100,000; that, before undertaking to make the purchase, the plaintiff agreed to act as agent for Mallory in the sale of the land; that for his services in effecting such sale Mallory was to pay him the sum of $10,000 out of the purchase price, and that on the day on which the contract for the purchase was signed Mallory gave the plaintiff a written order for that sum addressed to the defendants, requesting them to pay it to the plaintiff, and deduct the same from the purchase price of the premises. They deny that at the time of the purchase, or at any time prior thereto, the defendants had any notice or knowledge that the plaintiff had undertaken to act for or as agent of Mallory, or that in soliciting them to purchase he was acting in the interest or as the agent of Mallory, or that he was to receive any compensation from him; and they aver that they then understood and believed that the plaintiff was acting in respect to such purchase solely for himself and for them. "They deny that they ever agreed to pay the same, or any part thereof, except by applying the same in part payment for a share or interest which the plaintiff was to have in the business for which they purchased said premises, as hereinafter set forth." They further allege that the plaintiff, concealing the fact from them that he had undertaken to act for or as the agent of Mallory, and that Mallory had agreed to allow and pay him a commission, represented that he had an option good for 90 days for the pur-

chase of the property at the price of $100,000, and that it could not be purchased for less; that the property was very valuable; that large profits could be realized, developing and working certain mineral deposits found therein, and marketing the product; that he solicited them to furnish the funds and execute the obligations necessary to buy the property, allow him an interest in the purchase and a share in the anticipated profits, and consent to his being employed to develop and work the property; that, believing the statements and representations made by the plaintiff, they agreed to furnish the money and obligations necessary to purchase the property, and that it should be worked under the management of the plaintiff, and for his and their joint benefit; that he should receive one-fourth of the profits, and they the other three-fourths, and that the plaintiff should be allowed to draw from the funds of the business a stipulated sum per annum in anticipation of his share of the profits; that, in pursuance of this arrangement, the plaintiff proceeded and conducted the negotiations which led up to the purchase of the property; that after the execution of the contract, and before the title passed, the plaintiff informed them that he was to receive out of the purchase price the sum of $10,000 as a commission allowed him by Mallory for services in effecting a sale of the property; that they thereupon promptly proposed to rescind their agreement to allow the plaintiff an interest in the purchase and in the profits of the business, and notified him that he could not receive such commission and also have such interest, and that he must choose between the two; that it was finally agreed that the plaintiff should forego the payment of such commissions in cash, but should receive credit therefor in the books of the business as a contribution by him to the capital account, and that the same should be allowed as a payment on account for his one-fourth interest in the business; that thereupon, in pursuance of said agreement, the plaintiff surrendered the order to the defendants, and upon the opening of the books of the business, which was conducted under the name of the "Lantern Hill Silex Works," the plaintiff received credit therein for said sum of $10,000, in accordance with said agreement. Testimony in support of this defense was given, and at the end of the case a motion made for the direction of a verdict in the defendants' favor was granted, and from the judgment thereupon entered this appeal is taken.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

P. A. Eckerson, for appellant.

Howard Horton, for respondents.

O'BRIEN, J. The first question presented is as to whether the plaintiff's motion for judgment upon the pleadings, made at the opening of the case, should have been granted. In support of such motion, the cases of Fleischman v. Stern, 90 N. Y. 110; Beard v. Tilghman, 66 Hun, 16, 20 N. Y. Supp. 736; and Douglass v. Insurance Co., 138 N. Y. 209, 33 N. E. 938,—were urged upon the court below, and are brought to our attention, as authority for the rule that an affirmative defense, though inconsistent with the allegations of the complaint, when not coupled with or accompanied by a denial of such allegations, raises no issue. While not dissenting from this statement of the rule when applied to the construction of pleadings, we think it has no application to the case at bar; for it will be noticed that the material averment in the complaint constituting the right of action against the defendants was that of nonpayment, and that this is expressly controverted in the answer and payment pleaded. The complaint alleged that the $10,000 "should be paid out of the purchase price in equal installments by the defendants," and that the defendants agreed to pay the same "as follows, viz. $2,000 cash down, and the balance in four annual equal payments." But the answer denies that the payment

of the amount was to be made at any such times or in any such manner, and avers, in brief, that it was to be applied by the plaintiff as a contribution to the capital.    Whether this defense was supported by such a preponderance of evidence that the direction of a verdict was justified presents the important question on this appeal.

In Bagly v. Bowe, 105 N. Y. 171, 11 N. E. 386, the rule to be applied is thus stated in the syllabus:

"To justify the court in directing a verdict in any case upon the facts, the evidence must be undisputed, and so certain and convincing that no reasonable mind could come to but one conclusion.    In other cases, while the trial court or the general term is authorized to set aside the verdict and direct the issues to be tried before another jury, if in its judgment the verdict is against the weight or preponderance of evidence, the court cannot take from that tribunal the ultimate decision as to the facts."

While it would be impracticable to detail the testimony, there are certain facts agreed upon, or not seriously disputed, which may be stated and upon which we can rest our conclusion.    The plaintiff, who had become impressed with the mineral value of the land owned by one Mallory, had procured an option thereon for $100,000, with the intention either of selling it at a higher figure or obtaining the assistance of men with money who would engage with him in utilizing the mineral product, consisting of silex.    Not succeeding in the former, he sought an introduction through a brother-in-law to the defendants, and presented the proposition to them.    The plaintiff wished them to purchase and give him a half interest in the enterprise.    This they refused to do, but finally consented to a quarter interest, which they were to carry for him, and which was to be paid for out of the anticipated profits.    Under such an agreement, which was satisfactory to the plaintiff, he undertook to purchase the property for the defendants, and succeeded in arranging a contract on terms mutually satisfactory to the parties.    At the same time he secured a written order from the seller, Mallory, directed to the defendants, for the payment to him of the sum of $10,000 as a commission on the sale.    His story is that upon returning with the contract, on which he had paid $500 by means of a draft drawn on the defendants, he told them he was to receive $10,000 from Mallory as a present; but he studiously concealed the fact of the written order, which he says was presented to them only on the day when the title was to be closed, and that they then placed their acceptance on the written order.    It is thus clear that the plaintiff undertook, as the agent or partner of the defendants, to purchase the property at the lowest figure for which it could be purchased; and it is equally clear that while acting in either capacity he could not, by serving two masters, receive from Mallory the large sum of $10,000 as a commission for his services as the latter's agent, such employment being entirely inconsistent with the duty which he owed to the defendants.    Unless with their knowledge and consent, he could acquire no right to such a commission, and, if he should take it, the defendants, upon discovering the fact, could compel him to pay it over.    To surmount this bar to his recovery, the plaintiff testified that he had "no contract, understanding, or positive agreement of any kind whatsoever with Mr. Mallory in reference to the ten thousand dollars.

He gave me this after it was all over.    He gave me this order." Upon such testimony being given, the court interrogated him as follows: "Made you a present of it?    A. Yes, sir.    Q. A gift of ten thousand dollars for buying for what there was to buy, do you mean that? That he made you a gift of ten thousand dollars for buying, on behalf of parties in New York, property at one hundred thousand dollars over there,—responsible parties.  Do you mean that?    A. Judge, I mean he did."   The inherent improbability of this story is not its sole weakness.    That the $10,000 was not a gift to him personally by Mallory is shown:  (1) By the complaint, which alleges an indebtedness, and a promise by Mallory to pay him that amount for his services in negotiating the sale of the property to the defendants.    (2) By his testimony in the case of Holmes against Mallory, which was a suit brought to recover a commission for the sale of the property, wherein he swore that at the time the contract of purchase was completed  he received the order for $10,000.   "Mr. Mallory gave me an order on them for $10,000, the commission agreed upon for having made this sale."   (3) By Mallory's letter, in which he refers to the order given to the plaintiff as "an order on you for commissions." (4) By a guaranty, to which the plaintiff was a party, given to Mallory when sued by Holmes, and which contains the recital:   "And whereas, said Mallory has paid E. Richard Esmond   *   *   *   the sum of $10,000 for effecting such sale, as the person legally entitled thereto, *   *   *."   (5) By the plaintiff's letter, in which he writes:   "The termination of this suit releases any hindrance to paying me the ten thousand dollars commission that has been in statu quo because of the liability of the guaranty given by Mallory that he would pay one-half of any judgment, etc., that Holmes might get in his suit for commissions."   (6) By other exhibits in the case, which show an agreement by which the plaintiff was to receive commissions in the event of a sale of the property.    Additional references might be made to the testimony to prove beyond peradventure the falsity of the suggestion that the $10,000 represented by the order sued upon was a gift, and was not the result of a contract by which Mallory agreed to pay that sum as a commission for effecting a sale to the defendants.    But they are unnecessary.    While the demonstration of the untruth of the statement that it was a gift might not be conclusive on the plaintiff's right to recover, yet upon a most important, if not a crucial, feature of the case, it shook, if it did not destroy, the credibility of the plaintiff as a witness in his own behalf.

If we set out, therefore, with the inference, which is irresistible, that the plaintiff, while under contract with the defendants which made him a partner in the enterprise, or at least the agent of the defendants, undertook to purchase the property, and at the same time attempted to secure for his own benefit from the seller, Mallory, a commission of $10,000, we are furnished with an important aid in determining what the agreement was which the plaintiff and the defendants entered into regarding the disposition of this $10,000.   There is force in the suggestion that, whatever the agreement, it was a nudum pactum, because the plaintiff, in view of his relations with the defendants in negotiating the purchase, never acquired any legal right as against them to

the $10,000. The weight of testimony as to whether the agreement was a promise to pay absolutely that amount, as contended by the plaintiff, or to allow it as a credit to the plaintiff as a contribution to the capital of the business, we think is overwhelmingly in support of the latter contention. It is true the plaintiff's evidence and the defendants' acceptance of the order tended to support the cause of action alleged in the complaint, that the defendants had accepted the draft in writing for the $10,000, which amount they had received by deducting it from the purchase price, and had agreed to pay it to the plaintiff. The acceptance of the order, however, is explained by three witnesses as having been given at the time the title was closed, at the request of Mallory's lawyer, who desired to have his liability to pay the commission disposed of and discharged. That such was the purpose of accepting the order is consistent with all the other testimony in the case, except the plaintiff's statement that it was accepted unconditionally by one of the defendants on the morning when the title was closed, and before going to the lawyers' office, where Mallory and all the parties met to close the title. If this testimony is to be credited, we must infer that, having consented to give the plaintiff a quarter interest in the business for procuring the property, upon discovery that he was to receive in addition $10,000 as commissions the defendants thought nothing of it, and consented that he should be paid that amount. This, however, is not only in conflict with the testimony of several witnesses examined on behalf of the defendants, but is in direct conflict with one of the exhibits in the case, which reads as follows:

"This is to say that the interest of E. R. Esmond in the Lantern Hill Silex Works with George H. and Nathan Seeley is as follows: Said Esmond is to have 25 per cent. of the net profits when obtained. Out of the purchase of the property and money invested, he has contributed thereto $10,000, all of which is subject to the same disposition as is that of the Messrs. Seeleys."

This exhibit was made by the plaintiff a year after the transaction was closed, and the circumstances under which he wrote it he thus details:

"Exhibit E is in my handwriting. I can't tell you just the date that was made. That paper is a memorandum made by me at a time after I was trying to get my interest in this matter put down in writing. I could not find out what they really would do or meant, and I found out in the conversation that that was what they thought would be done or willing to do. To make it sure that I was not mistaken, I said, 'Please repeat that;' and that is why I put it there."

Why, if his interest was fixed the year before, it was necessary to get down in writing just what the defendants understood they had given him, is not explained. But, apart from this, this exhibit is conclusive upon the question that at some time a demurrer was interposed to the absolute payment of the commission, and that it was a subject of discussion between the parties. The inference to be drawn from the evidence thus furnished by the plaintiff himself, coupled with the testimony of three other witnesses at least, is that, when the defendants' attention was first brought to the subject of the commission, which was prior to the closing of the title, they refused to consent that the plaintiff should have both his interest in the business and

the commission, but insisted that he should elect between them, and that finally the arrangement was made, as claimed by the defendants, and which, as held by the learned trial judge, was supported by a clear preponderance, that it should be credited to the plaintiff as a contribution to the capital. The plaintiff thereafter, as superintendent or manager, undertook to conduct the business, and the books were therefore accessible to him; and, though he says he did not see the entry, it is conceded that the $10,000 was entered in the books to the credit of the plaintiff as a contribution to the capital of the business by the bookkeeper at the time the business was commenced, and that a year afterwards a statement or balance sheet of the business in which that appeared was furnished to the plaintiff; and yet, with notice thus brought home as to the light in which the defendants regarded the $10,000, we have acquiescence on the part of the plaintiff until such time as it was demonstrated that the business was a failure and the anticipated profits could not be realized. Then, regretting, no doubt, the election to take profits instead of the commission, the plaintiff brought this action, and undertook to support it by testimony which of itself was not only inherently improbable, but was overborne by every writing, including his own, produced in evidence, except the written order, and by every witness examined, save the plaintiff himself. There can be no doubt, upon such a record, that had the question in any phase been presented to the jury, and a verdict been obtained in the plaintiff's favor, it would be our duty to reverse it on the ground that it was against the weight of evidence. While this would not necessarily justify the direction of a verdict, we think, upon the facts here appearing, that disposition was proper, because in support of the defense the evidence is "so certain and convincing that no reasonable mind could come to but one conclusion." We have less hesitation in reaching this conclusion because we think that, taking the plaintiff's story as true, there was absent, to support their assent to the payment, under the agreement alleged, a sufficient consideration upon which to support their promise, so long as the plaintiff retained an interest in the business; that the defendants had a right to regard the $10,000 as an asset of the partnership; and that when, instead of doing this, they assented to allowing the plaintiff the benefit of it as a contribution to that extent to the capital of the co-partnership, he received all he was entitled to, and has no just ground for complaint.

We think, therefore, the judgment was right, and should be affirmed, with costs.

VAN BRUNT. P. J., and McLAUGHLIN and PATTERSON, JJ., concur. INGRAHAM. J., concurs in result.