## Swift v. Ward.

Partnership : RIGHT TO DISSOLVE : CONSTRUCTION OF ARTICLES.
    Plaintiff was a young physician in the city of Des Moines with but
    a few years' practice. Defendant was a physician of long expe-
    rience and extensive practice in the same city. January 1, 1886,
    in consideration of thirty-one hundred dollars paid defendant by
    plaintiff, they entered into an agreement of equal partnership.
    The agreement contained the following clause : "The partnership

Swift v. Ward.

shall continue for the term of ten (10) years from this date, unless sooner terminated by mutual consent, or by notice, which shall be in writing, and be delivered sixty days before taking effect." April 1, 1887, plaintiff became unable, by reason of sickness, to continue in the work of his profession, and there was but little hope of his being again able to do so. In June following he left the state and was seeking elsewhere such relief as he might get from a change of climate. While so absent, and while still incapacitated for duty, defendant wrote him, October 25, 1887, and notified him of his election to declare the partnership ended on the first day of January, 1888. *Held* that the clause above quoted from the articles of partnership was sufficient authority for the dissolution upon defendant's option upon giving the notice which he gave, and that he was not liable in damages for wrongfully excluding plaintiff from the partnership. [BECK, J., *dissenting.*]

*Appeal from Polk District Court.*—HON. CHARLES H. BISHOP, Judge.

FILED, JUNE 3, 1890.

THE plaintiff in this action seeks to recover damages for the alleged breach of a contract of partnership, entered into between the parties on the first day of January, 1886. The ground of recovery is that the defendant wrongfully dissolved the partnership before its expiration, without just cause. There was a trial by jury, and a verdict and judgment for plaintiff, and defendant appeals.

*St. John, Stevenson & Whisenand* and *C. C. & C. L. Nourse,* for appellant.

*Berryhill & Henry* and *Kauffman & Guernsey,* for appellee.

ROTHROCK, C. J.—It is conceded that the plaintiff and defendant entered into a written agreement by which they became partners in the practice of medicine and surgery. The contract is in these words:

"DES MOINES, IOWA, January 1, 1886.

"This agreement of partnership witnesseth, that W. H. Ward and L. C. Swift have this day entered into

and formed a partnership, under the firm name and style of Ward & Swift, for the practice of medicine and surgery, upon the following terms and conditions, to-wit: This is to be an equal partnership, each member thereof bearing one-half of all office and professional expenses, and each partner shall receive one-half of the fees paid or to be paid by the patients of either, or both, after this date. The partnership shall continue for the term of ten (10) years from this date unless sooner terminated by mutual consent or by notice which shall be in writing and delivered sixty days before taking effect; or the said partnership may be extended beyond the above-named ten years by mutual consent. The above-named L. C. Swift further agrees to keep the books of the partnership, and that he will at all times keep the said books "posted" up to within thirty days of the commencements of the current month. It is further agreed that the books of the partnership shall at all times be open to the inspection of either member of the firm so long as any of the accounts contained therein remain unsettled. To facilitate a final distribution required by death or dissolution of partnership, the above partners agree to make and preserve memoranda and records of what portion of their office furniture, library or instruments are bought in as private property, and what portion has been bought with firm money.

"The above partnership is entered into as stated under the further consideration that L. C. Swift has paid to W. H. Ward the sum of thirty-one hundred dollars and no cents ($3,100).

"W. H. WARD.

"L. C. SWIFT."

In pursuance of this contract the parties pursued the active practice of their profession at the city of Des Moines; each partner giving his personal attention to the business until April 1, 1887, when the plaintiff became sick and disabled, so that he was totally incapacitated from giving any attention whatever to

Swift v. Ward.

his profession. He remained in this condition until June, 1887, when, by the advice of his physicians, he was removed to New Brunswick, in the state of New Jersey, where he remained for a time, and then went to the seacoast in that state, and later to Stroudsburgh, Pennsylvania. On the first day of September, 1887, the plaintiff addressed a letter to the defendant, in which he made the following statement in regard to his health : "You do not know how I long to get to work again, but it would be sheer madness, as I am not able to care for myself yet,—much less other people. This sea air has done much for me in the three weeks I have been here. I sit up most all day ; require very little help in dressing. But I do not wear regular underclothes, and have to keep out of the least breath of air. But I sit out on the upper piazza all day, feed myself, walk about two rods alone, and then sit down and work hard for breath. But everybody tells me that I look just as well as ever. My muscles are filling out slowly, but I have not much strength. For instance, I find that I cannot brush my hair, but can wash my face." On the twenty-second day of October, 1887, in another letter to the defendant, the plaintiff made the following statements : "My friends, professional and others, are advising my residence in the pine woods of either New Jersey or South Carolina, and against my risking the sudden changes and inclemency of an Iowa winter. That is a great disappointment to me, as I have been looking forward to being in Des Moines, at any rate,— may be at work,—by January, 1888. But it seems that my lung clears up very slowly, only about one-half, may be a little less, the upper part of the middle lobes being the part that allows bronchial breathing. So I suppose that it would be wise for me to do as I am advised. But it is very discouraging for me ; the single consolation being that almost sure recovery will be the result, if I can avoid set-backs. So it will behoove me to avoid all risks. In this I know you will encourage and agree with me, and I would like to

have a letter from you showing this, if you can find time. The other day I walked two miles, and was not more tired than Mabel. This shows the improvement in strength of my nervous system, as evidenced by my heart's action." On the twenty-fifth day of October, in the same year, the defendant addressed a letter to the plaintiff in these words :

"Des Moines, Iowa, October 25, 1887.

"*Dr. L. C. Swift.*

"Dear Sir :—I have been waiting and hoping that a restoration to your former health would enable you to resume your duties in the practice here, under our partnership articles, before this ; but I am sorry this has not been the case. I, therefore, feel compelled to exercise the right which the articles give me, and to declare the partnership between us at an end from and after the first day of January next. I am ready to make settlement, upon a just and fair basis, of all the partnership earnings up to that time, and trust this will be satisfactory to you, and that our relations in the future, as in the past, will continue to be friendly and pleasant. Yours truly,

"W. H. Ward."

The plaintiff replied to this notice of dissolution by expressing surprise thereat, and giving directions as to the disposition to be made of his private property left in the partnership office. In this letter he made the following reference to his health : "I cannot say yet, with certainty, about returning to Des Moines to practice, but feel myself that it would be risky for me. But, in spite of this, I hate to give up the start I worked for and had. * * * But my decision will depend upon the opinion of my advisers, who have already done so much for me here in that way." On December 6, 1887, plaintiff wrote further to the defendant in respect to his health as follows : "I find that I cannot attend to very simple business details readily at all, so feel perfectly satisfied that it is best for my

brother to attend to all my business affairs, and know that you will agree with me. This has been forcibly impressed upon me by the effects I have seen from a simple 'cold in my head,' contracted last Wednesday, just giving way now. Will you please put my old ledger, which is in your safe,—at least, I left it there,—into my old desk, as well as any other books, etc., of mine that may be lying around. Mabel joins me in regards to Mrs. Ward and you."

The evidence shows that at the time the plaintiff was removed from Des Moines, in June, 1887, it was not expected by his medical attendants that he would ever recover his health so as to be able to practice his profession. At the time of the trial, he was still a non-resident of this state, but the evidence shows that he was restored to health. He is a young man, and had been engaged in the practice of his profession alone at Des Moines for a few years before he entered into the partnership. The defendant was an old and established practitioner, with a large practice, and had been actively in the business at Des Moines for many years. His health was not good ; and, at the time the partnership was formed, it was understood that the defendant was to be away for a time that winter, and he was absent for about two months. At another time during the partnership he was absent about one month. It appears that for the year 1886 the firm did a practice amounting to seventy-eight hundred dollars. This was the amount as shown by the books, but it does not appear what amount was actually received by the firm. We have given the above facts in reference to the sickness of the plaintiff, and the extent of the business, the relative standing and reputation of the parties in their profession, for the purpose of showing the situation and circumstances surrounding the parties when the contract was made. This is always permissible when there is contention between parties to a contract as to their rights thereunder. However, as will be observed further on in this opinion, we regard

this contract as so plain and explicit as to the right of either party to terminate the partnership relation that the circumstances surrounding the parties are of very little consequence in construing the contract.

The whole controversy arises over that clause of the contract which provides that the partnership shall continue for ten years, " unless sooner terminated by mutual consent, or by notice, which shall be in writing, and delivered sixty days before taking effect." It is insisted by counsel for appellee that this is a contract for a partnership for ten years, and that, although either party had the right to dissolve the relation by giving the required notice, yet he must take the consequences of a wrongful dissolution, and that there was no right to give the notice without just cause for a dissolution. The court took this view of the rights of the parties, and instructed the jury accordingly. On the other hand, the appellant contends that either party had the absolute right to dissolve the contract by giving the requisite notice, and that this might be done without cause. We adopt this view, and think that any other construction of the contract would be a plain violation of its terms. This is not a contract for a partnership for ten years absolutely. By its very terms the time is made to depend on the will of either party. Either the plaintiff or the defendant had the absolute right to dissolve their relation in sixty days ; and, to hold that this right could not be exercised without some just cause, it is necessary to interpolate some such clause in the writing. In our opinion, there is no just ground for holding that any such a stipulation arises on this contract, even by the remotest implication. Counsel for the plaintiff contend with great earnestness that under the contract a cause for dissolution must arise, and then that the provision as to notice is merely a means for exercising the right of dissolution for cause. This idea is repeated many times in argument, and we have given it full consideration ; but it appears to us that the condition or exception in the contract by which

either party may terminate the relation excludes the idea of any legal cause being necessary to exercise the right. And it is plainly evident all through the record and arguments that the right of recovery is really based upon the fact that the plaintiff paid to the defendant the sum of thirty-one hundred dollars as part consideration for the contract; and the thought is repeatedly referred to that, if there was an absolute right to dissolve by giving the notice, then the defendant could have served the notice immediately after the partnership was formed, and kept the thirty-one hundred dollars. No such case is presented for our consideration. The partnership continued for two years, and there is not one word in the evidence tending to show that the defendant at any time acted in bad faith, or was chargeable with deceit. If the defendant had wholly failed and refused to comply with the contract, or had terminated it by a notice given immediately, it may be that there would be a right of action to recover the bonus paid. See *Carlton v. Cummins*, 51 Ind. 478. It would seem that in such case there might be a recovery on the ground of fraud. But that question we do not determine. The plaintiff claims damages on the ground that, by the alleged wrongful act of the defendant in dissolving the partnership, he has been deprived of the benefits of a partnership for ten years.

The foregoing considerations dispose of the case. If, under the contract, the relation of the parties could lawfully be dissolved by giving the notice, it is not necessary to determine what is a legal cause for dissolution of a partnership where the articles of partnership make no provision for a dissolution. In this case the parties did not leave that question to be determined by the courts. By their contract, they stipulated that either party might terminate the relation by notice. The judgment of the district court is

REVERSED.

BECK, J. (*dissenting*)—I. I entertain a positive and clear conviction that the construction put upon the contract between the parties by the majority of the court in the foregoing opinion is plainly erroneous. The clause of the contract demanding construction is in this language: "The partnership shall continue for the term of ten years from this date, unless sooner terminated by mutual consent, or by notice, which shall be in writing, and delivered sixty days before taking effect; or the said partnership may be extended beyond the above-named ten years by mutual consent."

II. This provision fixes the period of duration of the partnership at ten years. But the period may be terminated, *first*, by mutual consent; *second*, by notice, in writing, delivered sixty days before the date fixed for the termination of the partnership. The interpretation of the language relating to the notice I shall now attempt. It is plain that the language does not mean that a written notice *per se* terminates the partnership. The notice is not the ground or cause of the dissolution of the contract, but is only the vehicle conveying knowledge of some act or the exercise of a volition which has the effect to terminate the contract. The notice, therefore, *per se*, does not dissolve the partnership. The parties stipulate in the clause of the contract I have quoted that the partnership may be terminated "by notice." But, as we have just seen, the notice will not dissolve the partnership without a prior act or volition, knowledge of which the notice promulgates. It is the proclamation of an act or purpose which dissolves the partnership.

III. We shall now proceed to inquire what act is relied upon by the defendant as a dissolution of the partnership. The answer of the defendant and the contents of the notice of dissolution are not based upon a right claimed by the defendant to dissolve the partnership upon the mere exercise of his volition, without cause, but are based upon the sickness of plaintiff,

and its probable continuance. We need not inquire whether defendant is authorized to dissolve the partnership without cause. Surely, no secret power is expressed in the contract, and it will hardly be claimed that one partner may lawfully, without cause, terminate a partnership without the consent of the other partner.

IV. I am now brought to inquire whether the sickness of plaintiff, as shown in the majority opinion, constituted a legal cause for the dissolution of the partnership by the act of defendant, as shown in the notice. I am clear in the opinion that it does not. Sickness, physical disability and insanity, which will probably be protracted so as to incapacitate a partner from discharging his duty under the partnership contract, and other like causes, are grounds for the dissolution of a partnership by action in chancery. But they are not grounds upon which a partner may exclude his copartner from the business of the firm, or may declare, by notice or otherwise, the dissolution of the partnership. This rule, I think, is supported by the books. I find nothing in conflict with it. It is based upon the plainest rules of justice. Disease, mental and physical, are incident to human existence, and may occur in the life of every man. That the law would hold his contracts of copartnership canceled, and the partnership dissolved, at the option of his copartner, without judicial adjudication, cannot for a moment be admitted. The common law, in its regard for justice, its practical adaptation of rules to the condition of the subjects of the law, its common-sense estimate and recognition of the rights of persons, never sanctioned a rule of this character, which, as shown by the facts of this case, is capable of working oppression in its application.

In the case before us, plaintiff paid defendant thirty-one hundred dollars as a consideration for the contract. After discharging his duties under the contract for about sixteen months, he is taken sick, and is sent, for care and treatment, to the home of his friends. After the expiration of six or seven months, when

.convalescent, he is notified by his partner that the partnership is dissolved. The partner who so rigorously enforces the contract shows that he himself had been, for a number of weeks, if not months, while plaintiff was connected with the firm, relieved of his duties as partner by reason of the condition of his own health, which required him to be absent during the winter. The plaintiff is entitled to the indulgence which defendant received, not only as a matter of humanity, but as a matter of law. The rule of law above stated is supported by the following authorities: Pars. Part. [3 Ed.] p. 503 (*463); 2 Bates, Part., sec. 581; 2 Lindl. Part. [2 Amer. Ed.] p. 577; Story, Part., secs. 291–297; 1 Colly. Part., p. 149, sec. 101, and notes; 2 Clark, Part., p. 659; Gow, Part., side pp. 268–273.