HENRY J. SCHMID AND OTHERS v. HOMER D. BALLARD
AND OTHERS.[1]

July 6, 1928.

Nos. 26,475, 26,525.

**Appointment of temporary receiver ex parte not erroneous.**
1. The court did not err, under the facts stated in the opinion, in appointing a temporary receiver ex parte for the defendant Twin City Securities Company.

**Denial of motion to vacate appointment was correct.**
2. The court did not err, when the question of the propriety of appointing a receiver was presented on its merits upon the motion of the defendant Twin City Securities Company to vacate the appointment, in denying the motion. Corporate control is rightly in the majority or in the stock having the sole voting power; but a court of equity will protect minority stockholders against the fraud of a majority and preferred stockholders without voting power against stockholders having the sole voting power.

**Propriety of making appointment.**
3. While the appointment of a temporary receiver is often a drastic measure and should be cautiously made if. at all, the propriety of making such an appointment is in a measure within the discretion of the trial court.

Corporations, 14 C. J. p. 851 n. 84.
Receivers, 34 Cyc. p. 19 n. 31; p. 86 n. 6; p. 122 n. 97.

See note in 39 L.R.A.(N.S.) 1036; 43 A. L. R. 248, et seq.; 7 R. C. L. 315; 2 R. C. L. Supp. 353.

Defendant Twin City Securities Company separately appealed from two orders of the district court for Hennepin county, Leary, J.

[1]Reported in 220 N. W. 423.

one appointing a receiver, and the other denying its motion to vacate the order of appointment.    Affirmed.

*Elliott & Coursolle* and *Brown, Wiggenhorn & Davis,* for appellant.

*Grimes & Maxwell* and *A. Enkema,* for respondents.

DIBELL, J.

Action by the plaintiffs, minority stockholders of the defendant Twin City Securities Company, against Homer D. Ballard and others, including the Twin City Securities Company, for an accounting and for specific and general relief.    A receiver of the Twin City company was appointed ex parte.    The company appeals from the order of appointment of date February 17, 1927, and from an order of July 10, 1927, denying its motion to vacate the earlier order. The two appeals were consolidated and heard together.

1.    On February 14, 1927, the summons in the action was given the sheriff for service and was returned within a day or two "not found."    It was immediately given the sheriff again and was returned "not found" on February 23, 1927.    On the same day it was served on the defendant Twin City company by leaving copies with the secretary of state in accordance with the provisions of G. S. 1923, § 9231.    No service of the application for a receiver was made upon the company.    None could be made.    Its officers had left Minnesota, and no office was maintained in the state.    The order of appointment gave the company the right to apply within 90 days for an order vacating it.    This may have added nothing to the rights of the company.    A like practice was adopted in Haugan v. Netland, 51 Minn. 552, 53 N. W. 873.    Afterwards the securities company appearing specially moved to vacate the order upon the ground that it was entered without jurisdiction.    The motion was denied on March 8, 1927.    Later the company appeared generally, moved to set aside the order, and a hearing was had on the merits.    It resulted in the order of July 10, 1927, denying the motion.    A consideration of the claimed error in the first order, on the ground of want of notice, is not to be discussed profitably.    In a proper case a receiver may be appointed without notice.    If the party for whom

a receiver is appointed without notice appears generally and is heard on the merits, on his motion to vacate the appointment, as here, he cannot well complain of the earlier order because he was not served with notice. See N. W. Nat. Bank v. Mickelson-Shapiro Co. 134 Minn. 422, 159 N. W. 948. And we pass to a consideration of the merits of the order refusing to vacate the appointment of the receiver, which is substantially the question whether on the showing made it was error to appoint a receiver pendente lite.

2. Plaintiffs are minority holders of the preferred stock of the Twin City Securities Company, a Minnesota corporation. It was incorporated in October, 1921. The defendants Ballard and Company, the name of which was afterwards changed to Ballard & Co. Inc., Twin City Mortgage Company, Twin City Land Company, Northwestern Mortgage Company, Ballard Securities Corporation, Minnesota Securities Company, Ballard Securities Company, and Midwest Land Company are corporations organized under the laws of Delaware at various times from 1922 to 1925. The defendant H. D. Ballard & Company was organized as a Minnesota corporation.

All these corporations were controlled by R. B. Ballard, his wife, Sarah G. H. Ballard, and his son, Homer D. Ballard. R. B. Ballard died on March 22, 1926. The control of the corporations continued in the Ballard family.

The Twin City Securities Company had an authorized capital of $50,000 of common stock and $200,000 of preferred stock. The common stock was the voting stock. It was issued for $44,000 in cash and a first mortgage for $16,000, making a total of $60,000, furnished by the Ballards. And with this showing it obtained a license from the securities commission of Minnesota to sell its preferred stock, and like licenses from similar boards in Illinois and Wisconsin. It sold or exchanged its preferred stock of $200,000 for mortgages or securities. The plaintiffs are the owners of $35,000 of the preferred stock.

The allegation of the complaint is that the purpose of the organization of the Delaware corporations, which were promoted and

were under the control of the Ballards, was to defraud the preferred stockholders situated as were the plaintiffs; and that they were dummy corporations convenient and used for carrying out the fraudulent purpose.

. The $44,000 which went into the treasury of the company was appropriated by R. B. Ballard, and the $16,000 mortgage was used as a part of the initial capital of Ballard and Company. For the $44,000 there was substituted worthless stock of the Drake-Ballard Company, and worthless individual notes. To this extent capital assets were depleted. The securities company, under direction of the Ballards, turned over to Ballard and Company something like $200,000 of its securities and received in exchange shares of Ballard and Company of the par value of $210,000. Apparently Ballard and Company had no substantial assets before. Various of the Delaware corporations were organized in a way similar to the organization of Ballard and Company, and the voting stock was issued to the Ballards and paid for by assets originally owned by the securities company. The securities company and Ballard and Company were considered the parent companies, the Ballards were in control of them, and they controlled the others. It is not necessary to examine in detail the organization of the other companies nor the various manipulations alleged. It is sufficient to say that there is a showing that they were organized to the detriment of the stockholders of the Twin City Securities Company and that the allegations of fraud are sufficient.

Insurance was taken upon the life of R. B. Ballard in excess of $2,000,000, and the premiums were paid from the assets of the defendant corporations. Policies amounting to $325,000 were payable to the securities company, and it paid the premiums. In 1924, the Ballards in control, the securities company assigned its rights in these policies to Homer D. Ballard, Sarah G. H. Ballard, and Lucille Wurtzberger, the daughter of R. B. Ballard, or to the Ballard Securities Corporation. There was no consideration for the transfer. The purpose was to defraud the securities company and its stockholders. Subsequently the Ballard Securities Corporation

collected a policy of $325,000 wrongfully transferred by the securities company.

The complaint alleges much more. We need not consider it now. If all we have mentioned is true, the plaintiffs and those situated as they were are entitled to relief. Green v. National Adv. & Amusement Co. 137 Minn. 65, 162 N. W. 1056, L. R. A. 1917E, 784; Thwing v. McDonald, 134 Minn. 148, 156 N. W. 780, 158 N. W. 820, 159 N. W. 564, Ann. Cas. 1918E, 420; Tasler v. Peerless Tire Co. 144 Minn. 150, 174 N. W. 731; Venner v. G. N. Ry. Co. 117 Minn. 447, 136 N. W. 271; Miner v. Belle Isle Ice Co. 93 Mich. 97, 116, 53 N. W. 218, 17 L. R. A. 412; State ex rel. v. Second Judicial Dist. Court, 15 Mont. 324, 39 P. 316, 27 L. R. A. 392, 48 A. S. R. 682; Columbia Nat. S. D. Co. v. Washed Bar S. D. Co. (C. C.) 136 F. 710; Provident Relief Assn. v. Vernon, 57 App. D. C. 235, 19 F. (2d) 709; note, 39 L.R.A.(N.S.) 1032, 1038; note, 43 A. L. R. 238, 246. Wrongdoing is directly denied by the securities company. The showing of the plaintiffs is such that we cannot say that the trial court might not conclude that probably the plaintiffs were entitled to relief and that protection should be given and a temporary receiver should be appointed. In the Green case, 137 Minn. 65, 69, 162 N. W. 1056, Chief Justice Brown said:

"Where by reason of the misconduct of those controlling the corporation substantial injury will result to the stockholders, a court of equity may, without statutory authority and in the absence of corporate insolvency intervene by way of receivership, require an accounting from the delinquent officers, order a sale of the corporate assets and adjudge a dissolution of the corporation."

There is no showing of insolvency. That, as just stated, does not necessarily prevent relief. In holding that the plaintiffs are entitled to a remedy, we do not infringe upon the rule which we have frequently stated, that in corporate management the majority controls and that a minority cannot complain of the honest policy pursued by those in authority. Nor can preferred stockholders, without the right to vote, complain of an honest control exercised by stockholders having the voting power. But if the control is exer-

cised in fraud of other stockholders relief will be given. It is not claimed that the same rule does not apply when those defrauded are preferred stockholders without voting power all of which is vested in the holders of the common stock.

3. The appointment of a temporary receiver is a drastic remedy. It should be made cautiously. Still the existence of some discretion in the trial court is recognized. The securities company had left Minnesota so far as it could leave it. Its officers were purposely without its jurisdiction. It took its office to Chicago and Milwaukee and afterwards to Montana. Upon the showing made we cannot say that it was not within the discretion of the trial court to appoint a receiver. Lowell v. Doe, 44 Minn. 144, 46 N. W. 297; Bean v. Heron, 65 Minn. 64, 67 N. W. 805; Donnelly v. Butts, 137 Minn. 1, 162 N. W. 674; Nielsen v. Heald, 151 Minn. 181, 186 N. W. 299, 26 A. L. R. 29; Wilkins v. Corey, 168 Minn. 102, 209 N. W. 754; 5 Dunnell, Minn. Dig. (2 ed.) § 8248; 2 Id. § 2074; G. S. 1923, § 9389. The trial court has control of the receiver whom it appointed, and if he is not needed he will not be retained.

Orders affirmed.