JAMES L. CRAWFORD v. NICHOLAS E. LUGOFF AND OTHERS.[1]

July 20, 1928.

No. 26,670.

**Secret bargaining for profits by members of joint adventure not permitted.**
    1. The rule that parties negotiating for the organization of a partnership or joint adventure deal at arm's length in transferring their own property cannot be extended so as to permit any one of them to bargain secretly for a share in the profits to be made by an agent of the association from his agency.

**New trial granted because conclusion of law was unsupported by finding of fact.**
    2. A pool was organized January 15 to market a block of corporate stock upon which L had an option expiring May 12. February 10, without any fraud inducing the action, the members of the pool voted to discontinue its operations and authorized a "retransfer" of the option. Accordingly L surrendered the option to the optionor, receiving

[1]Reported in 220 N. W. 822.

in consideration $5,000, which he divided with W and G, two members of the pool. In the absence of findings showing an intent otherwise, *held* that the pool may have had no interest in the option after its dissolution and its authorization of the retransfer. Accordingly a new trial is ordered of the issue whether W and G are liable for the money they received from the surrender of the option.

**When objection to plaintiff's capacity to sue is waived.**
3. The objection that a plaintiff claiming to sue on behalf of himself and his associates in a joint adventure has no capacity to sue as their virtual representative must be taken by demurrer or answer or it is waived.

Joint Adventures, 33 C. J. p. 851 n. 83; p. 857 n. 70.
New Trial, 29 Cyc. p. 832 n. 60.
Partnership, 30 Cyc. p. 454 n. 80.
Pleading, 31 Cyc. p. 296 n. 13.

Defendants Thomas A. Gall and William W. Wells appealed from an order of the district court for St. Louis county, Grannis, J. denying their motion for a new trial. Modified.

*Fryberger, Fulton & Boyle,* for appellant Gall.
*Washburn, Bailey & Mitchell,* for appellant Wells.
*Stilson & Goldberg,* for respondent.

STONE, J.
Action for an accounting for alleged secret profits of a joint adventure. After a decision for plaintiff, defendants Gall and Wells appeal from an order denying their motion for amended findings and in part the alternative of a new trial. Defendant Lugoff did not join in that motion and is not a party to the appeal.

Plaintiff sues ostensibly on behalf of himself and the other members of a pool, which included 20 other Duluth gentlemen, among them defendants Gall and Wells. It was organized under a written contract January 15, 1925, to market a block of the stock of the Carnegie Lead & Zinc Company, upon which Lugoff then had an option from the corporation. The undertaking required each subscriber to advance money up to the amount underwritten by him and provided that Lugoff should have "charge of the marketing of

said option stock" and any additional shares purchased to aid the undertaking. Any stock so purchased was to be bought at prices fixed by the associates or their trustee, defendant Wells, to whom, the agreement recites, Lugoff had agreed to assign, and to whom he did assign his option forthwith. The agreement provided that the stock should be sold by and through the trustee and that the proceeds should go to him, he being specifically charged with the duty of remitting to the Carnegie company for the option stock. "The balance," the agreement provides, "shall be kept by him for and on behalf of said pool," for distribution "by said trustee to said Lugoff and to the undersigned pro rata as herein provided," Lugoff to have one-third of the net profit as his compensation for selling stock.

The option had been acquired by Lugoff some time before. Gall and Wells, unlike Lugoff, were both members of the pool. They had assisted him in obtaining the option and when the pool was formed held his obligation for two-thirds of any profit realized therefrom. The pool continued until February 10, 1925, when it was dissolved by agreement of the members. A substantial profit had been realized. Lugoff received his one-third and paid to Gall and Wells two-thirds of it; that is, Lugoff, Gall and Wells each received one-ninth of the net profit. The finding is that, as to plaintiff and his associates other than Gall and Wells, the share so received by the latter was a secret profit, which should inure to the benefit of the pool, and judgment was ordered against them accordingly.

1. This brings us to the first point for appellants, which is that they are not accountable for their profit received from Lugoff. On both sides it is correctly premised that in their relations to each other, as to the obligation of good faith and full disclosure, and the resulting accountability for profits clandestinely made at the expense of the common enterprise, the members of the pool were joint adventurers and subject to the applicable rules of the law of partnership. Church v. Odell, 100 Minn. 98, 110 N. W. 346; 3 Dunnell, Minn. Dig. (2 ed.) § 4949; 33 C. J. 851. But, appellants argue, inasmuch as they had been associated with Lugoff in the acquisition

of the option, and at the time the pool was organized had a vested right to share in the profits therefrom, they were entitled to deal at arm's length with their associates; that, as their counsel put it, they could drive as hard a bargain as they wished so long as they indulged in no misrepresentation. They rely upon the rule of Densmore Oil Co. v. Densmore, 64 Pa. 43 (followed here in Walker v. Patterson, 166 Minn. 215, 221, 208 N. W. 3, 7) that in the organization of a partnership or association parties deal at arm's length in a sale to the new concern of their own property, and "are not bound to disclose the profit which they may realize by the transaction.".

The subject matter of that rule, the only thing it secures to its beneficiaries and in respect to which it absolves them from the duty of disclosure, is the advantage or gain which may be made by them, in the organization of a partnership or similar association, through the transfer of their own property to it. It does not apply, and in the very nature of things cannot apply, to a secret commission or other profit derived from a sale to the new enterprise of the property of another. Church v. Odell, 100 Minn. 98, 110 N. W. 346; Gasser v. Wall, 111 Minn. 6, 126 N. W. 284. A fortiori, it cannot cover a gain to be derived in the future from the operation of the enterprise. The moment they reach that field, and at whatever stage, the parties are under the duty of full and frank disclosure, and one making a secret profit is accountable therefor to his associates. So, while one member may charge what he likes for whatever property he puts into a joint adventure, he may not join it and in addition to his openly allotted share of the gain from operation procure an added portion by sharing secretly in the compensation of an agent, in whose appointment and the terms of which he has joined, without disclosing his interest in that appointment and the amplitude of the return allowed, ostensibly to the agent alone. That is what happened in this case. That it came about inadvertently cannot help the beneficiaries. The absence of bad faith relieves from the taint of moral delinquency but not from the legal consequences.

Appellants cite Murray v. Close, 118 Kan. 51, 234 P. 60. For its law it goes through Withroder v. Elmore, 106 Kan. 448, 188 P. 428,

10 A. L. R. 191, to Densmore Oil Co. v. Densmore, 64 Pa. 43, adopted here, as already stated, in Walker v. Patterson, 166 Minn. 215, 208 N. W. 3, 7. The defendants were sued, not for any gain from the operation of the joint adventure, but for a secret commission on the sale of certain undivided interests in an oil lease to plaintiffs, with whom defendants had been associated in the purchase of the entire lease. Unknown to plaintiffs, the owners had agreed with defendants that if the option were exercised they would get a commission. Recovery was denied under the rule of the Densmore case.

Whether that rule applies where the promoters are not vendors of their own property is open to serious question. Partners anticipate that any owner who sells them property may seek a profit. So far, they know his interest is selfish and antagonistic to their own. Therefore it seems to stretch the Densmore case somewhat to hold that purchasers of an oil lease must expect that an option holder will get a secret rebate or commission out of their money if they join with him as associates in the purchase. Such an extension of the rule is not in harmony with the weight of authority. Burbank v. Dennis, 101 Cal. 90, 98, 35 P. 444; Victor Oil Co. v. Drum, 184 Cal. 226, 193 P. 243; Stenian v. Tashjian, 178 Cal. 623, 174 P. 883; Esmond v. Seeley, 28 App. Div. 292, 51 N. Y. S. 36; Dunlop v. Richards, 2 E. D. Smith (N. Y.) 181.

In Victor Oil Co. v. Drum, 184 Cal. 226, 193 P. 243, defendants Drum and Coffin planned to organize a corporation to take over oil lands on which Drum had an option. With others they organized the plaintiff corporation, to which Drum sold at a profit of $32,500, which he divided with Coffin and two other organizers. The other stockholders were ignorant of Drum's profit. The court [184 Cal. 233] refused to apply Densmore Oil Co. v. Densmore [64 Pa. 43] because:

"The case is not one of a sale by the owner of property * * * in which the understanding * * * is that one of the associates is selling property to the association. * * * the essence of the business was that the defendants * * * induced * * * persons to associate with them for the purchase of certain properties

for prices greater than the properties could be obtained for, and without any disclosure * * * of the fact that the defendants expected to harvest the difference in price, * * * that in brief they would directly profit from the purchase, not as members of the association, but out of the moneys which their associates would contribute."

That reasoning applies here. Gall and Wells did not own the option. It was not known they were interested other than as members of the joint enterprise. At the risk of tiresome repetition, we again emphasize that their profits were not and could not be obtained until after the stage of negotiation and organization had been passed and that of partnership operation begun. That differentiates the case from Murray v. Close, 118 Kan. 51, 234 P. 60, even if that case correctly applies the law. Neither in that case, nor in any other which we have examined, is it suggested that in respect to firm operations partners do not owe each other the duty of full and frank disclosure. Any different holding would utterly disregard the fiduciary relation fundamental in all partnerships.

Pratt v. Frazer, 95 Ark. 405, 406, 129 S. W. 1088, is strikingly similar in its facts to the instant case. A corporation had asked the plaintiff "how it would suit him for John R. Pratt [defendant] to come over and for them to sell the stock of the company together." Under an agreement to divide profits and expenses equally, the plaintiff and defendant sold the stock on commission. Later, plaintiff learned that defendant had an individual contract with the company whereby he was to receive a bonus for each share sold. He sued for and recovered half that bonus. The court [95 Ark. 409] succinctly states the law:

"They agreed to share equally the profits and losses. * * * The $1 additional which the company agreed to pay appellant as a bonus was but an additional compensation * * *. Good faith required that appellant should make known to appellee the fact that he was receiving extra compensation, * * * each partner was entitled to receive an equal division of the profits * * *. This is so because, from their relationship, the partners are agents

for the firm, and what is done by either in furtherance of the partnership business is regarded as the act of the firm."

In the operation of such an enterprise as that now involved, all the associates proceed under the duty, applicable alike to partners and joint adventurers, of frank and full disclosure. That prevents, we repeat, any member from proceeding without the knowledge of his associates to make a bargain with their agent for a share in the profits of his agency. In making the contract with such an agent, each member is entitled to the impartial judgment of each of his associates uninfluenced by any hope of a secret profit from the activities of the agent. So we must and do agree with the learned trial judge in holding appellants severally liable for the share of the profits of the pool they received through Lugoff.

While parties are not trustees for each other in negotiating for a partnership, they must realize and abide by the unavoidable implications of their situation and proposed relationship. One that is inescapable is that no one of the associates is to take out of the enterprise, either from its organization or its operation, anything more than is stipulated for openly. When the negotiations go so far as to settle, and still more so when the articles of agreement have fixed, the amount which an associate is to have, that necessarily, and by an implication so direct as to be beyond the aid of further expression, negatives his legally getting anything more save by further open agreement. That is the logic of the law's bar of secret profits. But all that has no application to a partner's transfer of his own property. His selfish interest to get and his right to get, so long as he resorts to no affirmative wrong, the highest possible price and greatest possible profit, are obvious. On that interest and that right there is no negative by implication or expression, either in the nature of the negotiations or in the resulting contract. The general language of the discussion of this problem in Walker v. Patterson (166 Minn. 220, 221, 208 N. W. 3, 7), if construed in the light of its context and the issue to which it was addressed, will be so understood.

2. The Lugoff option by its terms was to run until May 12, 1925. In the agreement organizing the pool, it was recited that it was to

run only until May 1. So it may have been the intention that the pool continue as long as the option or until all of the optioned stock was disposed of. But on February 10, according to the helpful memorandum accompanying the decision below, Lugoff "flatly informed those present at the pool meeting that he was through and could and would proceed no further." Accordingly, the memorandum proceeds, "in effect, the pool members agreed that he might quit." The findings explicitly negative fraud as an inducement of that result. A record of the meeting on February 10 at which the pool members agreed to "quit" was kept, to the extent at least that a formal resolution is disclosed as follows:

"The following motion was made by Mr. Loring, duly seconded by Mr. Wenger, and unanimously adopted.

"Resolved That this pool be closed, and the Trustee, W. W. Wells, be authorized to retransfer the option on said Carnegie Lead & Zinc Company stock, and that he distribute the profits pro rata among the subscribers according to said subscription agreement."

That certainly was authority for such a "retransfer" of the option to Lugoff, its original owner. Lugoff sold no further stock under the option but surrendered it to the Carnegie company, the optionor, in consideration of the sum of $5,000, which he divided with Wells and Gall pursuant to his original agreement with them, each of them receiving $1,041.67. Why that profit was not made out of a right voluntarily discarded and relinquished to Lugoff by the pool, and not in the process of winding up its affairs, we fail to see, even though the formal, written surrender was by Wells as trustee. But the finding is that the money so received by Wells and Gall constitutes "secret profits" for which they are liable. That finding approximates a conclusion of law and is unsupported by any preliminary finding of basic fact. There is an express finding that "no fraudulent representations were made by the defendants or any of them to induce" the resolution authorizing the "retransfer" of the option. That resolution, so far as the findings go, stands unimpeached. On the face of things the intention seems to have been, at least it is not negatived by any finding, that the pool should sur-

render the option absolutely, retaining no right whatsoever therein. If that be so, the option ceased to be the property of the pool and was discharged wholly of the right of the pool members to any further profit therefrom; and Lugoff could do as he pleased with it and with any profits he might make out of the surrender or other disposition of it.

But it is not our function to find the facts upon this phase of the case. In view of the new trial ordered below upon another issue we think, and it will be so ordered, that the new trial should include also the issue of the accountability of defendants Wells and Gall for their share of the $5,000 received for the surrender of the option.

3. The complaint avers that plaintiff sues "on behalf of himself and all of the other members of said pool." There is some evidence that the suit was the result of and probably agreed upon at a meeting of most but not all the members. Beyond that plaintiff has not gone in an effort to bring himself within G. S. 1923, § 9165, which enacts the equitable doctrine of "virtual representation" (20 R. C. L. 669-671). It requires that except when otherwise expressly provided by law every action shall be prosecuted in the name of the real party in interest. There is added the proviso that "when the question is one of the common or general interest to many persons, or when those who might be made parties are numerous, and it is impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." So the right of a plaintiff to sue on behalf of others now rests in statute and is not aided by agreement, formal or informal, with those whom he claims to represent. This feature of the case does not seem to have had much attention from counsel. Even the finding on the point is not of either of the statutory essentials. It is only that the "action is brought by the plaintiff on his own behalf and on behalf of the other members of the said pool." It was not until their motion for a new trial that counsel for appellants seem to have taken formal note of the representative character of the suit. Neither by demurrer nor by specific answer did they challenge plaintiff's capacity to sue as the representative of his associates. A plaintiff's lack of legal

capacity to sue must be raised by demurrer or answer or it is waived. G. S. 1923, §§ 9251, 9252; Tapley v. Tapley, 10 Minn. 360 (448), 88 Am. D. 76; Pope v. Waugh, 94 Minn. 502, 103 N. W. 500; Dalsgaard v. Meierding, 140 Minn. 388, 168 N. W. 584; Brazney v. Barnard, 169 Minn. 501, 211 N. W. 949; 5 Dunnell, Minn. Dig. (2 ed.) § 7678.

At the outset we referred to the action as one for an accounting. Upon the complaint as originally framed, it seemed more like one for fraud and deceit practiced in the dissolution of the pool when, as the complaint avers, further profits were possible and were actually made by those responsible for the alleged fraud. The evidence apparently destroyed plaintiff's original theory. But it did develop that Lugoff shared his one-third of the profit with Wells and Gall. At the close of the trial, an amendment was allowed so as to permit plaintiff to recover upon the theory that the profits so received by them belonged to the pool. On the motion for a new trial the allowing of that amendment and the ordering of judgment accordingly was attacked as error. Because apparently of the possible element of surprise, a new trial was ordered on the single issue whether the profit so gotten by Wells and Gall from Lugoff was a secret gain for which they were accountable. Otherwise, the motion for a new trial was denied, thereby making the order appealable. The burden of the argument for appellants is that they are entitled to a new trial on all of the issues. As already indicated, we are of the opinion that the new trial should include the issue of liability for the share received by appellants from the money paid Lugoff for the surrender of the option; and there should of course be findings of the basic facts determinative of that issue.

The order appealed from is modified accordingly, and as so modified is affirmed.