## HARRY STRAUS v. BESSIE STRAUS AND OTHERS.

94 N. W. (2d) 679.

January 30, 1959—No. 37,498.

*Hoffmann, Donahue, Graff, Schultz & Springer,* for appellant.
*Milton H. Altman* and *Lipschultz, Altman, Geraghty & Mulally,* for respondents.

NELSON, JUSTICE.

Two issues are presented on this appeal: (1) Whether the trial court abused its discretion in denying plaintiff's motions for the appointment of a temporary receiver; and (2) whether the trial court abused its discretion in granting defendants' motion for the continuation of the partnership business by defendants during the pendency of the litigation. We will therefore be concerned with the question whether the evidence

as a whole reasonably tends to support the orders of the trial court. See, 1 Dunnell, Dig. (3 ed.) §§ 410, 411, and collected cases.

The general rule that upon appeal the evidence must be taken in the light most favorable to the prevailing party applies to evidence presented by affidavits submitted in support of and in opposition to motions.[1] Conflicts in the evidence, even though the presentation is upon affidavits, are to be resolved by the trial court.

Plaintiff alleges in his complaint that on August 1, 1951, plaintiff and defendants formed a partnership for the purpose of manufacture and sale of knit goods and the wholesaling of such other merchandise as the partners might from time to time determine. The name of the partnership, as previously, was to be "Straus Knitting Mills." A copy of the partnership agreement was attached to and made a part of the complaint. By its terms defendant Bessie Straus was designated as the "first party," defendant Samuel Straus as the "second party," defendant J. Louis Straus as the "third party," and Harry Straus, the plaintiff and appellant, as the "fourth party." In recognition of the invaluable services rendered to the partnership by plaintiff, as of January 1, 1950, the net profits of the business were to be divided as follows:

> "First party ........................ 10 per cent
> Second party ...................... 30 per cent
> Third party ....................... 30 per cent
> Fourth party ...................... 30 per cent"

It was further provided that the parties had on January 1, 1945, entered into articles of partnership which were amended on January 8, 1950, by oral agreement retroactive to January 1, 1950. The agreement then stated:

"WHEREAS, the parties are now desirous of confirming the aforesaid oral amendment of the Articles of Partnership between said parties, and reducing the same to writing, and

"WHEREAS, ever since the 1st of January, 1945, the parties hereto

---

[1]See, Bauer v. Kummer, 244 Minn. 488, 70 N. W. (2d) 273; Pierce v. Grand Army of the Republic, 220 Minn. 552, 20 N. W. (2d) 489; Cullen v. City of Minneapolis, 201 Minn. 102, 275 N. W. 414.

have been co-partners in accordance with the terms, conditions and provisions of the Articles of Partnership entered into by them on the 1st of January, 1945, as amended by the oral arrangement of said parties on January 8, 1950.

"Now, THEREFORE, IT IS AGREED by and between said parties, as follows:

"(a) That the partnership heretofore existing between the parties hereto, under the firm name of Straus Knitting Mills, and under the terms, conditions and provisions of said Articles of Partnership entered into on January 1, 1945, as orally amended on January 8, 1950, as hereinafter more fully set forth, be and the same hereby is confirmed and continued.

"(b) That the aforesaid Articles of Partnership as orally amended on January 8, 1950, be and the same hereby are amended by substituting, in lieu and in place thereof, the following Articles of Partnership, it being the intent and purpose of these presents not to create a new partnership between said parties, but rather to set forth herein all of the terms, conditions and provisions of the original Articles of Partnership as orally amended:

"1. IT IS AGREED that the capital accounts of the parties hereto, as of the close of business on December 31, 1949, are as set forth in Exhibit 'A' hereto attached and made a part hereof by reference, the same as if set forth herein in full and in detail.

\* \* \* \* \*

"5. The partnership shall be for a period of two (2) years and thereafter from year to year, subject to the termination of said partnership by any of said partners upon (60) days' notice in writing to the other partners prior to the end of any calendar year. If no such notice shall be given, said partnership shall continue for the next succeeding year, and thereafter, as aforesaid.

\* \* \* \* \*

"24. IT IS HEREBY DECLARED to be the express intent of the parties that only the parties hereto, or the survivors of them, shall at any time be partners in the business of the Straus Knitting Mills.

"25. Each partner shall:

"(a) diligently attend to the business and devote his whole time and

attention thereto. (This provision does not apply to the first party; nor to the fourth party so long as he is in the Armed Forces of the United States.)

"(b) punctually pay his or her separate debts and indemnify the other partners and the assets of the firm against the same and all expenses on account thereof.

"(c) forthwith pay all moneys, checks and negotiable instruments received by him or her on account of the firm into said bank to the firm account.

"(d) be just and faithful to the others of them, and at all times give to the others full information and truthful explanations of all matters relating to the affairs of the partnership, and afford every assistance in his or her power in carrying on the business for their mutual advantage."

Article 27 provided for the manner of accounting at the determination of the partnership, and Article 28 provided that:

"If any disagreement shall arise between or among the parties hereto, or any of them, or between or among the parties hereto or any of them, and the representative of the estate of any deceased partner, in relation to the determination of the value of the share of any deceased partner, or the terms or manner of payment for the share of any deceased partner, or in respect of any other matter, cause or thing arising out of this agreement, and not herein otherwise provided for, the same shall be decided and determined by arbitrators."

The record indicates that the present partnership is a substantial and profitable one, having a net worth as of December 31, 1957, of approximately $248,000 and a profit for the year ending on that date of approximately $85,000, the latter sum constituting the largest profit realized by the said partnership except during war years. During three prior years, ending with 1956, there was a loss at the end of the year. On December 31, 1957, the debts of the partnership were no more than approximately $15,000 and no part of these debts was due at that time.

The affidavit of defendant Samuel Straus shows that the capital accounts of the partners were posted as follows on June 30, 1957:

| | |
|---|---|
| Bessie Straus | $ 46,588 |
| Samuel Straus | 103,044 |
| J. Louis Straus | 63,036 |
| Harry Straus | 2,556 |

It also states that the capital account of plaintiff on June 30, 1957, was 1.19 percent of the total capital of the partnership and on December 31, 1957, was not reasonably expected to exceed the sum of $25,000.

The record further indicates that the partners' respective balances as of December 31, 1957, stood as follows:

| | |
|---|---|
| Bessie Straus | $ 51,238 |
| Samuel Straus | 111,997 |
| J. Louis Straus | 72,554 |
| Harry Straus | 13,081 |

If the aforesaid figures are correct, then plaintiff's capital account as of December 31, 1957, was approximately 5.26 percent of the total capital account. The defendants contend that for each 5 cents the plaintiff would lose in forcing a dissolution at this time they would lose 95 cents.

This is an action for the dissolution of a partnership, for the appointment of a permanent receiver, and for an accounting. M. S. A. 576.01 authorizes the appointment of a receiver on the application of a party who shall show an apparent right to property which is the subject of the action and is in the possession of an adverse party and that the property is in danger of loss or material impairment. There is no showing in the record before us that the defendants were insolvent or unable to respond to a money judgment in the event plaintiff were to obtain one.

The cases governing the appointment of receivers are collected in 16 Dunnell, Dig. (3 ed.) § 8248. In Owens v. J. L. Owens Co. 161 Minn. 6, 200 N. W. 845, the appointment of a temporary receiver for a corporation was made by the trial court. This court reversed the trial court. In doing so reference was made to the fact that the company had been successful and that the value of its assets over and above liabilities largely exceeded the amount of its paid-in capital. This court pointed out that the controversy concerned the internal affairs of the

company—the interest or share in the company and its profits together with the voice in its management; that the company was a going concern, a concern where confidence on the part of the customers that they were dealing with a responsible company to which they could look to remedy defects and from which they could obtain repairs as needed were contributing factors to the success of the business. This court suggested that if the company were placed in the hands of a receiver customers would naturally conclude that it was being wound up and the effect upon its business would be injurious if not disastrous. It concluded by saying (161 Minn. 10, 200 N. W. 847):

"In the record now before us we find nothing which, under the rules governing such matters, will justify the appointment of a receiver pendente lite. *We wish it understood that what has been said is not to be taken as indicating any opinion concerning the merits of the controversy. The order appointing a temporary receiver is reversed.*" (Italics supplied.)

The action in the instant case has not yet been tried on the merits. We think it may be fairly asumed that, when all the facts are before the trial court, it will be in a position to determine the rights of the respective parties and can then take such action as may be necessary to protect and enforce such rights.

In Albrecht v. Diamon, 125 Minn. 283, 146 N. W. 1101, the trial court in an action for partnership dissolution granted a motion for the appointment of a receiver. This court reversed stating that the appeal involved only the question whether the appointment of a receiver was justified under the findings of fact. This court noted that a receivership would add expense and ruin a going business without helping anybody, as there were no creditors, and that if a receiver were to sell the assets and deduct his fees and expenses the entire balance would go to defendant. It therefore reached the conclusion that the court below had full power to do justice between the parties without the cost and injurious effect of a receivership. It based its decision upon the rule that, while an application for the appointment of a receiver in an action for partnership dissolution and settlement is addressed to the discretion of the court, it should not be granted unless found to be necessary in

order to protect the property, or the interests of the parties.

Seward v. Schrieber, 240 Minn. 489, 62 N. W. (2d) 48, involved a partnership accounting. The trial court denied plaintiff's motion for the appointment of a receiver on the ground that there was no showing that the defendant was insolvent or unable to respond to a money judgment. In that case, defendant had interposed a verified answer denying all the material allegations of the complaint. Defendant also had submitted affidavits wherein he affirmed that he was not insolvent, listing assets in proof thereof. This court held that the court's discretion in appointing a receiver must be cautiously and sparingly exercised; that it should apply only where the moving party has no adequate remedy at law; and that there must be evidence that the plaintiff is in danger of serious loss or injury. *This court further stated that the conflict on all these issues compelled the conclusion that the trial court was not in error in denying the motion for a receiver.*

This court has repeatedly said that courts will proceed with great caution in granting an application for a receiver to take possession of property pendente lite; that such application is addressed to the discretion of the trial court and will not be granted in a doubtful case; that the showing must be clear, strong, and convincing; and that the application will be granted only under circumstances requiring summary relief or where the court is satisfied that there is imminent danger of loss and where there is no adequate remedy at law. See, Bacon v. Engstrom, 129 Minn. 229, 152 N. W. 264, 537; Schmid v. Ballard, 175 Minn. 138, 220 N. W. 423; Helgeson v. Dart, 162 Minn. 521, 203 N. W. 229; Zwick v. Security State Bank, 186 Minn. 308, 243 N. W. 140; Bliss v. Griswold, 222 Minn. 494, 25 N. W. (2d) 302.

The court held in Bliss v. Griswold, *supra,* that even though the appointment of a receiver was justified by the evidence tending to show fraud, deceit, and misappropriation of partnership assets by the defendant, and though plaintiff was in imminent danger of serious loss and injury, the alternative order providing for a bond and a limited receivership was proper and would fully protect the interests of plaintiff.

Plaintiff has alleged and contends in his brief that the present partnership is one at will. Plaintiff also contends, in the alternative, that he is entitled to the appointment of a receiver pendente lite because the

agreed term of the partnership ended on December 31, 1957. When the agreed term ended is a fact yet to be determined at a trial on the merits. Plaintiff assumes that the end of the agreed term of the partnership, whenever that may be, automatically entitles him to the appointment of a receiver and a sale of the partnership assets. Defendants take issue with plaintiff as to the time the term of the agreed partnership will end. They argue that at least it is necessary to take evidence on that point in order to determine the intent of the parties when entering into the agreement of August 1, 1951.

It is clear that the partnership name "Straus Knitting Mills" has been a family partnership name applied to the present business over the years and that plaintiff's name has never specifically been included therein. It seems a remote possibility that any creditor would be misled by giving credit to the partnership on the assumption that plaintiff was still a partner.

The trial court in denying plaintiff's motion for appointment of a receiver ordered:

"That, pursuant to the provisions of M. S. A. Section 323.37, Subdivision 2, defendants and each of them may, during the agreed term for the partnership continue the business of the partnership in the same name by themselves, and for that purpose may possess the partnership property.

"That the sum of the bond provided for by M. S. A. Section 323.37, Subdivision 2, is hereby fixed at the sum of Thirty-five Thousand Dollars ($35,000.00). That bond shall be submitted by defendants to the Court for approval within ten (10) days from and after the date hereof.

"That plaintiff be, and he hereby is, restrained and enjoined from in any manner interfering or attempting to interfere with defendants in the conduct of the partnership business during the pendency of this action."

The aforesaid bond was approved and filed on December 26, 1957. The plaintiff by letter of May 6, 1957, had given defendants written notice insisting that the partnership business be terminated on December 31, 1957, and on November 28, 1957, commenced the present action.

The defendants contended: "Assuming, but not conceding, that the May 6, 1957 notice was legally effective to cause a dissolution on December 31, 1957 instead of on July 31, 1958, December 31, 1957, is the earliest date on which a dissolution could occur in accordance with the terms of the partnership agreement." The plaintiff by a series of letters, addressed and mailed to the three defendants and dated June 30, 1957, July 30, 1957, August 31, 1957, September 30, 1957, and October 29, 1957, stated that he was exercising his right and privilege to terminate the partnership so that it would no longer exist.

As to whether plaintiff's bringing of this action constituted a wrongful dissolution of the partnership, the trial court was of the opinion that a ruling on this question should await the trial of the action during which testimony could be taken and the matter given full consideration. The court therefore proceeded to act under § 323.37, subd. 2.[2]

---

[2]M. S. A. 323.37 reads as follows:

"Subdivision 1. When dissolution is caused in any way, except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. If dissolution is caused by expulsion of a partner, bona fide under the partnership agreement, and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under section 323.35, he shall receive in cash only the net amount due him from the partnership.

"Subd. 2. When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:

"(1) Each partner who has not caused dissolution wrongfully shall have:

"(a) All the rights specified in subdivision 1; and

"(b) The right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement;

"(2) The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same name, either by themselves or jointly with others, may do so, during the agreed term for the partnership, and for that purpose may possess the partnership property, provided they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully the value of his interest in the partnership at the dissolution, less any damages recoverable under clause

A trial on the merits will determine whether plaintiff's action has caused a wrongful dissolution, thus making the provisions of § 323.37 applicable. The provisions of § 323.30 govern as to whether a dissolution has occurred. That section lists the recognized causes of dissolution. Only § 323.37, subd. 2, appears to be applicable, as the record now stands. Section 323.30(1) cannot apply because the term of the partnership could not end until December 31, 1957, at the earliest. Subsections (3), (4), and (5) do not apply, and subsection (6) does not apply because no decree of dissolution has been made.

Defendants do not deny that plaintiff has exercised his express will to cause a dissolution either by his letter of May 6, 1957, or by the institution of suit. Even if the letter of May 6, 1957, was legally effective to cause a dissolution under the terms of the partnership agreement, it is apparent that the institution of suit on November 28, 1957, caused an immediate dissolution of the partnership, which would be in contravention of the partnership agreement. If there has been a wrongful dissolution, § 323.37, subd. 2, would apply. Since there were conflicts in the evidence in that regard when the matter came before the trial court on the motions here involved, the trial court, being of the view that the issue could only be fully determined at a trial upon the merits, applied the sanctions under the aforesaid section of the statute in order that full protection might be afforded plaintiff in the interim and the necessity of a receivership avoided.

The affidavits relied upon by defendants indicate that a controversy

---

(1)(b), and in like manner indemnify him against all present or future partnership liabilities;

"(3) A partner who has caused the dissolution wrongfully shall have:

"(a) If the business is not continued under the provisions of clause (2), all the rights of a partner under subdivision 1, subject to clause (1)(b);

"(b) If the business is continued under subdivision 2, clause (2), the right as against his copartners and all claiming through them in respect of their interests in the partnership, to have the value of his interest in the partnership, less any damages caused to his copartners by the dissolution, ascertained and paid to him in cash, or the payment secured by bond approved by the court, and to be released from all existing liabilities of the partnership; but in ascertaining the value of the partner's interest the value of the good-will of the business shall not be considered."

existed between the plaintiff and the three defendants concerning the internal affairs of the company, plaintiff's share or interest in the company, the profits of the company, and who was to have the greater voice in its management. It is unnecessary to relate this controversy in detail since these matters will all be explored during the trial on the merits and were before the court through the medium of affidavits at the hearing below. Unless the trial court abused its discretion, there would be no justification for reversing the present orders while the controversy in the main remains undecided and it is reasonably clear that the plaintiff's rights will be fully protected.

Plaintiff argues in his brief that the instant partnership was one at will which plaintiff could dissolve at any time without invoking the sanction set forth in § 323.37. However, in contending that the agreed term of the partnership ended on December 31, 1957, plaintiff necessarily consents that the partnership had a definite term. Whether the partnership is one at will or one for a definite term has not yet been fully determined. Those matters have only been considered in so far as necessary to determine the present issues before the court; a full and final determination must come after a trial on those issues and others here involved.

A distinction must be recognized between the power to dissolve a partnership and the right to dissolve a partnership. Any partner may have the power to dissolve a partnership at any time, whether the partnership involved be one for a definite term or at will, and this is true even though such dissolution is in contravention of the partnership agreement. See, § 323.30(2). The right to dissolve a partnership is governed by § 323.30(1) according to the specified situations set forth therein. Of course, when a partner has a right to dissolve the partnership, as was true in Swift v. Ward, 80 Iowa 700, 45 N. W. 1044, 11 L. R. A. 302, relied upon by the plaintiff, and cited in his brief, the sanctions of § 323.37 do not apply. If a partner exercises his power to dissolve a partnership, but does not have the right to do so, he must suffer the penalties prescribed in § 323.37.

In the instant case, article 5 of the partnership agreement of August 1, 1951, provides that the partnership shall be for a period of 2 years and thereafter from year to year subject to termination upon 60 days'

notice in writing to the other partners prior to the end of any calendar year. It naturally follows that at the end of 2 years it became a partnership from year to year, terminable only at the end of any calendar year by the giving of the prescribed notice. The plaintiff herein had both the power and the right to dissolve the partnership by giving 60 days' notice prior to the end of any calendar year. It has yet to be determined when the calendar year ends. While it is agreed that the plaintiff had the power to dissolve the partnership by giving 60 days' written notice as provided in the agreement, the question still remains whether he had the right to dissolve the partnership, as was done by bringing suit. If he did not, he must of necessity face the statutory sanctions which may be applied under § 323.37.[3]

---

[3]See article by Dean William Draper Lewis, *The Uniform Partnership Act,* 24 Yale L. J. 617, 626:

"The subject of the dissolution and winding up of a partnership is involved in considerable confusion principally because of the various ways in which the word 'dissolution' is employed. The term sometimes designates the completion of the winding up of partnership affairs. This, the end of the association, should be called the termination of the partnership. Again the term is sometimes used to designate the process of liquidation or winding up. We are frequently informed in the syllabi of cases and in digests that a partnership is not dissolved by the retirement of a member if the other members have a right to continue the business. What is meant, of course, is that the right of winding up the affairs of the partnership does not always exist when the business ceases to be carried on by all the persons who were carrying it on prior to the retirement of one of them. Lastly, the term is employed as designating a change in the relation of the partners caused by any partner ceasing to be associated in the carrying on of the business. As thus used 'dissolution' does not terminate the partnership, it merely ends the carrying on of the business in that partnership. The partnership continues until the winding up of partnership affairs is completed. This last is the sense in which the term 'dissolution' is used in the Act. Section 29 reads: 'The dissolution of a partnership is the change in the relation of the partners caused by any partner ceasing to be associated in the carrying on as distinguished from the winding up of the business.' Section 30 says: 'On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.'

"Section 31(2) declares that dissolution of a partnership is caused 'in contravention of the agreement between the partners, where the circum-

We agree with the contention of defendants that the words "during the agreed term for the partnership" which appear in § 323.37, subd. 2(2), have no application to the instant case. Plaintiff, in addition to contending that the term of the partnership is one at will, also urges that since the term of the partnership ended on December 31, 1957, by virtue of his repeated notices to the defendants, the trial court was in error in permitting defendants to continue the business during the pendency of the action. The defendants, however, contend that plaintiff in taking the latter position is in error on two grounds: (1) That the duration of the term of the partnership, if relevant to the instant case, is a matter to be determined by the trial court, and (2) that the words "during the agreed term for the partnership" which appear in § 323.37 will be shown to have no application to the instant case.

The record would indicate that the bond in the amount of $35,000 fully protects plaintiff. A trial on the merits will determine whether plaintiff is in a position to question the length of time the remaining partners may continue in the partnership business and whether the applicable statute limits the continuation of the partnership business by the remaining partners to the agreed term. In Mulder & Volz, The Drafting of Partnership Agreements (1955 Rev.) p. 18, published by the Committee on Continuing Legal Education of the American Law Institute, the authors had this to say:

"Winding up of the affairs of the partnership consists of collecting all assets, paying all liabilities and distributing the remainder of the partnership property to the partners entitled thereto. The right to wind

---

stances do not permit a dissolution under any other provision of this section, by the express will of any partner at any time.' This paragraph settles a matter on which at present considerable confusion and uncertainty exists. It allows a partner to dissolve a partnership in contravention of the agreement between the partners. The word 'dissolve' is used in the sense just explained, and is supported by the weight of authority. The relation of partners is one of agency. The agency is such a personal one that equity cannot enforce it even where the agreement provides that the partnership shall continue for a definite time. The power of any partner to terminate the relation, even though in doing so he breaks a contract, should, it is submitted, be recognized. The rights of the parties upon a dissolution in contravention of the agreement are safeguarded by Section 38 (2)."

up the affairs of a partnership vests in all of the partners unless the partnership has been dissolved wrongfully as, for example, because of the acts of a partner in violation of the partnership agreement. In the case of such wrongful dissolution, the right vests in the innocent partners who may, if they desire, continue the business with the same name instead of winding up its affairs. In this event, the partner wrongfully dissolving the business is to be bought out and indemnified against all present or future partnership liabilities."[4]

After full consideration of the record presented on this appeal, we reach the conclusion that the trial court did not abuse its discretion in denying plaintiff's motion for the appointment of a temporary receiver nor in granting defendant's motion for continuation of the partnership business during the pendency of the action and fixing the amount of the bond to protect plaintiff, pursuant to the provisions of § 323.37, subd. 2. We think the record amply justifies an affirmance of the trial court's orders. This conclusion is not to be understood as indicating any opinion concerning the merits of the controversy yet to be tried.

Affirmed.

---

[4]See 2 Barrett & Seago, Partners and Partnerships, c. 8, § 2.2, p. 14, wherein the authors state that:

"Under Section 38 of the Uniform Partnership Act [which is M. S. A. 323.37], it was sought to protect partners from the hardship that might result from a winding up of the partnership business in consequence of a partner insisting upon dissolution. By the terms of Section 38 it is possible to pay to the partner who is seeking the dissolution the net amount that is due him and at the same time indemnify him against any further liabilities for partnership obligations. The end result is the avoidance of dissolution."

Also see, Windom Nat. Bank v. Klein, 191 Minn. 447, 254 N. W. 602; People's Sav. & Trust Co. v. Sheboygan Machine Co. 212 Wis. 449, 249 N. W. 527, 250 N. W. 385, 88 A. L. R. 1306; 50 Am. Jur., Statutes, § 466; Crossman v. Gibney, 164 Wis. 395, 160 N. W. 172; Kurtzon v. Kurtzon, 339 Ill. App. 431, 90 N. E. (2d) 245; Engelbrecht v. McCullough, 80 Ariz. 77, 292 P. (2d) 845.

As to whether an accounting between partners will lie even though a dissolution of the firm is sought, see McAlpine v. Millen, 104 Minn. 289, 116 N. W. 583; Lundquist v. Peterson, 134 Minn. 279, 158 N. W. 426, 159 N. W. 569; Crawford v. Lugoff, 175 Minn. 226, 220 N. W. 822; Kitzman v. Postier & Kruger Co. Inc. 204 Minn. 343, 283 N. W. 542; Bailly v. Betti, 241 N. Y. 22, 148 N. E. 776.