MINNEAPOLIS TRUST COMPANY v. LOUIS F. MENAGE and Others.[1]

August 8, 1900.

Nos. 11,952—(39).

#### Trustee's Account—Sale of Bonds—Value.

In an action wherein plaintiff, receiver of the Northwestern Guaranty Loan Company, was appointed special trustee of certain bonds belonging to certain creditors of said insolvent estate, the bonds were sold by order of the court, upon recommendation of the trustee, for the sum of $29,500. In a hearing upon objections filed against the trustee's account, the trial court found that the value of the bonds at the time of the sale was $88,500, and that the trustee could, in the exercise of reasonable diligence, have obtained that sum for the same. *Held*, that the evidence does not support the conclusions.

Appeal by Minneapolis Trust Company, trustee, from an order of the district court for Hennepin county, Otis, J., adjusting and settling its account. Reversed.

*W. E. Dodge, Rome G. Brown, Charles S. Albert* and *J. B. Atwater,* for appellant.

*Francis B. Hart* and *A. B. Jackson,* for respondents.

LEWIS, J.

On a former appeal in this action the court were of the opinion that, in view of the fact that the application by the creditors for a new trial was partly based upon newly-discovered evidence, a new trial should be granted, in order that a further investigation might be made into the conduct of the trustee with reference to the sale of the bonds in question. Minneapolis Trust Co. v. Menage, 73 Minn. 441, 76 N. W. 195. Accordingly the case was sent back for a new trial.

At the second trial a vast amount of evidence on the part of both sides was introduced. The inquiry took a very wide range, and as a result we have before us a printed record of twelve hundred pages, much additional matter in the return not printed, and elaborate and exhaustive briefs. The court below found that the secre-

[1] Reported in 83 N. W. 481.

tary and treasurer of the trustee, the Minneapolis Trust Company, who had the matter in charge, had been guilty of fraud in conducting the sale of the bonds, which fraud consisted in co-operating with the prospective purchasers of the bonds to effect a sale for less than their value; that the bonds at the time of the sale were reasonably worth the sum of $88,500; that the trustee, in the exercise of due and reasonable diligence, could and would have obtained said sum therefor; and that the trustee's account should be surcharged with the sum of $88,500.

After a most patient and careful examination of the evidence, and having given due consideration to the findings of the court and the briefs of counsel, we are unable to agree as to whether the evidence is sufficient to support the conclusion of the court below to the effect that the trustee or its representative was acting in bad faith in connection with the sale. We are of the opinion, however, that the evidence does not support the conclusion of the trial court in the following respect, viz.: That the bonds were sold for a less sum than they were reasonably worth, that the bonds were reasonably worth $88,500, and that, in the exercise of due and reasonable diligence, the trustee could have obtained that sum for them.

In the event of a new trial, we shall not further embarrass the trial court by making any reference to the evidence bearing upon the question of fraud. The bonds in question were second mortgage bonds upon which the interest was in default, subject to a first mortgage past due and under threat of foreclosure, and other prior liens amounting to a large sum, and the only available assets of the association were unimproved lots situated in a suburban part of the city of Chicago. The question is not what was the value of the lots over and above the prior liens, but what was the value of the bonds, as such, in the conditions and under the circumstances at the time of the sale. The real estate may have been worth the value placed upon it by some of the witnesses, if the lots could be sold out at those figures within a reasonable time. The effect such value would have on the bonds would depend on the demand for such property, and the ability to hold off the prior liens until enough of the lots could be sold to pay them off. Neither was the value to be ascertained by assuming that the trustee might have put value into them

by engineering through some financial scheme of rebonding, or assessment of the stockholders, thereby taking care of the prior indebtedness.   On the question of the good faith of the trustee, it would be proper to consider whether it did all that it reasonably could in that respect to get money out of the bonds, but their value was not to be determined by the possible success of such speculative measures.

The sum of $88,500 is assumed as their market value, with no evidence to support it, except the inference that such a sum might have been realized, had the trustee organized a scheme by which the shareholders in the West Pullman Association could have been assessed ten cents on the dollar, or by inducing all the creditors to combine and pay off the first mortgage.   Again, there is no evidence in the case to justify the conclusion that the trustee might have obtained $88,500 for the bonds by the exercise of reasonable diligence.   Neither would the fact that the trustee had claimed that the bonds were of greater value than sold for, nor the fact that inquiry had been made some months previous to this sale, by a representative of the association, as to whether the bonds could be purchased at a higher price, justify the conclusion that the bonds were of a greater value at the time of the sale.

If the bonds were of the value found by the court, that fact would have a necessary bearing upon the good faith of the trustee; hence it became important that their value be established by clear and satisfactory evidence.   Conceding, without deciding, that the evidence warrants a finding to the effect that the trustee's representative conspired to throw the sale of the bonds to the syndicate at the price named by the purchaser, the fact of itself would not warrant the conclusion that a better price could have been obtained if he had not done so.   The question before the trustee was to save the largest amount possible out of the funds, in view of the new conditions confronting it.   Reasonable diligence was required, but there is no evidence of any market value for the bonds at that time, or that other purchasers were ready to buy at a better price, or that the trustee could have, in the exercise of reasonable diligence, obtained a better price.   The value fixed by the court rests upon inferences too uncertain and indefinite to justify it.

It is unnecessary to refer to the other questions raised by the assignments of error, viz. right to surcharge, estoppel, and laches. Those questions must be considered as settled by the former appeal.

For the reasons stated, the orders are reversed, and a new trial granted.

START, C. J.

I dissent.