# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF MINNESOTA.

---

MINNEAPOLIS TRUST COMPANY v. LOUIS F. MENAGE and Others.[1]

April 11, 1902.

Nos. 12,788 [2]—(101).[3]

**Receiver's Account—Motion to Set Aside.**

In ruling upon an interlocutory motion to set aside an order allowing a receiver's account in insolvency proceedings it is not necessary that specific findings of fact and law be separately stated by the trial court.

**Good Faith—Findings.**

An order of the trial court, which in effect allows a receiver's account, and refuses to surcharge the same under claim that such receiver was guilty of positive bad faith and fraud in the sale of trust property, involves the conclusion of fact that the receiver's conduct was characterized by good faith, without more specific findings in that respect.

**Account Allowed.**

Upon a review of the evidence before the trial court in this case, *held*, that it reasonably tends to support the essential conclusion reached therein that there was good faith by the receiver in the sale of certain trust property, and that the account was properly allowed.

Appeal by defendants, La Salle National Bank and others, objecting creditors, from an order of the district court for Hennepin county, Cray, J., refusing to vacate an order allowing the final account of plaintiff as receiver of Northwestern Guaranty Loan Company, and denying a motion for a new trial. Affirmed.

[1] Reported in 90 N. W. 3.   [2] See note on page iv, supra.   [3] October, 1901. term.

86 M.—1

*Francis B. Hart, Charles J. Bartleson* and *A. B. Jackson,* for appellants.

*W. E. Dodge, Rome G. Brown, Charles S. Albert* and *Cohen, Atwater & Shaw,* for respondent.

LOVELY, J.

Review of an order in insolvency proceedings at the suit of the Minneapolis Trust Company, receiver of the Northwestern Guaranty Loan Company, against Louis F. Menage and others, refusing to vacate the allowance of the final account of the receiver.

This is the third time this controversy has been before this court. It was first considered in Minneapolis Trust Co. v. Menage, 73 Minn. 441, 76 N. W. 195, and again on the second appeal in 81 Minn. 186, 83 N. W. 481. The history of the struggle by the trust company to secure the allowance of its account against the objections of the La Salle National Bank for itself and other creditors of the Guaranty Loan Company seeking to have the account surcharged for alleged fraud and misconduct by the receiver has been so fully and accurately stated by Justice MITCHELL in the opinion on the first appeal that it is unnecessary to do more at this time than call attention thereto for a correct knowledge of the questions at issue.

After the last remand from this court the issues involved were again heard at great length, and seem to have been most patiently and carefully considered by the trial court, who allowed the receiver's account in full, holding that the objections to the same based upon the alleged fraud and positive bad faith of the trust company were unfounded, and ordered judgment in favor of the receiver. Subsequent to this order the objectors moved the court to make specific findings of fact embracing many details affecting the good faith of the trustee in the sale of certain bonds of the West Pullman Association. The court denied this motion. Defendants excepted, and moved to set aside the decision of the court. This was denied. Defendants then moved for a new trial, which was also refused. From the last order this appeal brings to this court two questions:

1. Was it error for the court to refuse to make specific findings as requested by defendants?

2. Was there any breach of duty on the part of the plaintiff, the trust company, in the sale of the bonds of the West Pullman Association upon the claim of the objectors that the trust company was guilty of "positive bad faith and fraud"?

In disposing of the preliminary question of procedure the fact must be recognized that all the issues involved in the request for specific findings were embraced in the ultimate conclusion that the plaintiff had exercised good faith and honesty in the sale of the bonds. Of course, this conclusion depended upon many incidents and details of the evidence. Counsel insist that they should have been passed upon separately, but it is not to be questioned that upon the formal pleadings in ordinary actions to recover for fraud and bad faith a finding by the court of the ultimate fact that the party accused of misconduct had exercised good faith in the transaction would be sufficient to support a conclusion of law based thereon. . Such was the result of the order appealed from. It was so treated on the first appeal, in which this court directed a new trial, and sent the case back for a rehearing, because it was not satisfied that sufficiently reasonable explanations had been made to the trial court of questioned acts and omissions of its own trustee in disposing of the bonds for ten per cent. only of their par value, when the unexplained conduct of the trustee's agent, Hamblin, indicated that a larger sum might have been secured for the beneficiaries.

It is clear that the duty of the trial court to make specific findings of fact on such an order must depend upon the provisions of law in that respect. Section 5386 (G. S. 1894) of the chapter relating to civil procedure, provides that

"Upon the trial of an issue of fact by the court its decision shall be in writing; in giving the decision the facts found and the conclusions of law shall be separately stated," etc.

To determine what is an issue of fact upon which such findings are to be based, we naturally turn to its statutory definition. In another provision of the same chapter we find that

"An issue of fact arises: First,—upon a material allegation in the complaint, controverted by the answer; or, second,—upon new matter in the answer controverted by the reply; or, third,—upon

new matter in the reply, except when an issue of law is joined thereon; issues both of law and of fact may arise upon different and distinct parts of the pleadings in the same action." G. S. 1894, § 5357.

This section was section 195 of the General Statutes of 1866, enacted at the same time with what is now G. S. 1894, § 5386. From these plain requirements it seems clear that separate findings of fact and law are limited to the material averments presented by formal pleadings, and intended to be made responsive thereto; hence we cannot hold that upon an order included in or intermediate to the material questions presented by the pleadings it is incumbent upon the trial court to make separate findings of fact and law.

So far as we are conversant with the practice in this respect, the view we have taken seems to have been adopted generally by the profession and the district courts of this state. While in some instances courts have made specific separate findings upon interlocutory motions arising during the trial, yet this has been generally treated as within their discretion. That such has been the view of this court is to be gathered from its language in two recent cases. In Wells v. Penfield, 70 Minn. 66, 69, 72 N. W. 816, 817, it was stated upon an intermediary order of the same character as the one now before us that, "While it was not necessary for the court to incorporate any 'findings of fact' in its order, yet, having done so," etc. And again, in Sjorberg v. Security Sav. & L. Assn., 73 Minn. 203, 214, 75 N. W. 1119, it was stated that, "Where the trial court makes findings of fact as the basis of its order (although it is unnecessary so to do), and omits to find all facts legally necessary to sustain the order, it will be reversed, unless the record conclusively shows that the order is right."

Under these rulings, had the court made findings of fact, which, as said in the cases referred to, was unnecessary, its order would have been controlled by them; but it seems also to have been held that it was not, as a matter of law, required to do so, and we think that orderly practice in the conduct of cases should not require the trial court, during the progress of a case, to make separate findings upon each incidental question or interlocutory motion as it is disposed of.

Upon the main proposition questioning the good faith of the receiver we have had the benefit of exhaustive briefs, as well as an extended discussion of the evidence considered by the trial court, to show upon the one side that the acts and omissions of Hamblin as agent of the trust company were characterized by "positive bad faith and fraud," as well as to support the opposing claim that, under all the circumstances surrounding the sale of the bonds of the West Pullman Association, he exercised that degree of honesty and positive good faith required by the trustee of the court in such matters. We do not propose to review or consider again what must be regarded as the law of this case settled upon the former appeals, viz., that the plaintiff was responsible for the acts of Hamblin in the negotiations and transfers of the West Pullman bonds; that a previous order of the trial court directing the sale of the bonds was not conclusive against the defendants, but they were entitled to have the account of the trustee surcharged with the value of such bonds, providing it could be shown that Hamblin was guilty of fraud and bad faith in making the sale; and, again, that while the rule that an appellate court will not disturb the findings of the trial court if there is evidence reasonably tending to support them applied, such rule was made subject to the necessity of showing in this case that the highest degree of good faith had in fact been exercised.

We have adopted the statement of the law from the first appeal to the effect that positive good faith should be shown by the trust company. We have also had before us the suggested explanations required by this court (as stated in its opinion by Justice MITCH-ELL) to excuse its subagent, Hamblin, from the charges of "positive bad faith and fraud" for which the plaintiff would be responsible. The probative facts pertinent to this issue were fully discussed on the argument, as well as in the briefs of counsel. They have been most considerately examined. We have given to the record, containing over fourteen hundred pages of printed matter, the most thorough, careful, and patient investigation, and in determining this appeal we are compelled to hold that the order of the trial court was not so palpably against the weight of evidence tending to show that the sale of the West Pullman bonds was

characterized by good faith and honesty as to justify our reversal of the order appealed from. While the court should closely scrutinize the conduct of its own trustees, and take into consideration all the evidence bearing upon their conduct, it has been held to have done so in this case. The requisite explanations of Hamblin's conduct in the sale of the bonds suggested by the opinion on the first appeal have been attempted, and upon the whole evidence we think their effect was for the trial court, and to its determination that they were sufficient we must apply the rule therein that an "appellate court will not disturb the findings of the trial court if there is evidence reasonably tending to support them." We think this rule applies to the order allowing the receiver's account in this case.

Order affirmed.