## LESLIE S. HIGH v. SUPREME LODGE OF THE WORLD, LOYAL ORDER OF MOOSE.[1]

January 5, 1940.

No. 32,276.

[1]Reported in 289 N. W. 519.

*Leslie S. High, pro se.*
*A. A. Toivonen* and *W. F. Dacey,* for respondent.

LORING, JUSTICE.

Appeal from an order setting aside service of summons and complaint.

Defendant is a fraternal and charitable organization incorporated under the laws of Indiana, where its offices are located. Subordinate lodges are granted charters by defendant, whose laws provide that they shall be "in conformity with, subject to, and under the jurisdiction and control of the laws for the regulation of Lodges of the Loyal Order of Moose." Any such charter of a subordinate lodge may be suspended or revoked by defendant, and upon revocation or other dissolution of any lodge all its assets and property are deemed property of defendant. Defendant determines what dues shall be paid by members of subordinate lodges and to what uses the money so taken shall be put. Defendant's laws provide for a membership-activities committee, to which is delegated the duty of increasing the "membership of the lodges, strengthening their finances, stimulating them to greater activity pertaining to the good of the Order." The committee has authority to pay "salaries, compensation and expenses as it may determine." An auditing committee is empowered by the laws of defendant to examine the books and records of subordinate lodges, and investigate "discrepancies." The Supreme Secretary of defendant may suspend a local lodge officer for any such "discrepancy." Defendant exercises exclusive control over its particular charity, Mooseheart, an orphans' home located at Mooseheart, Illinois. Part of the dues paid by individual members to local lodges is required by the laws of defendant to be paid to it for the maintenance and operation of the Mooseheart Home. The laws of defendant further provide that local lodges or chapters of the order "shall not be the agents of the Supreme Lodge in the transaction of any of their business and particularly not in the matter of the election and initiation to membership in such units of applicants for membership therein, nor in the conduct

of the business of such units or in any dealing by such units with their members of any kind whatsoever."

The activities of the order are primarily social and charitable. It is not engaged in business for profit. It has not appointed an agent authorized to accept service of process under 2 Mason Minn. St. 1927, § 7493.

Lodge No. 505 is a subordinate lodge of defendant located in the city of Duluth. Plaintiff, an attorney at law, performed legal services for and on behalf of the Duluth lodge and is herein suing defendant for the reasonable value thereof. He seeks to subject defendant, pursuant to 2 Mason Minn. St. 1927, § 9231(3), to the jurisdiction of Minnesota, on the ground that defendant is doing business in Minnesota by and through said local lodge. Plaintiff caused service to be made upon Thomas Johnson, who bears the title "District Deputy Supreme Dictator" and who is the officer at the head of the local unit, Duluth Lodge No. 505, appointed by defendant's Supreme Dictator by and with the advice and consent of the Supreme Council, *i. e.,* the board of directors of defendant. Defendant appeared specially in a motion to have the service set aside and vacated on the ground that it is not amenable to process in this state and that Thomas Johnson is not an officer or agent of defendant upon whom service can be made. The trial court granted the motion, and the appeal is from the order setting aside the service.

The cases relied upon by defendant and the trial court are Minnesota Commercial Men's Assn. v. Benn, 261 U. S. 140, 43 S. Ct. 293, 67 L. ed. 573, and Kasel v. Milwaukee Employees Pension Assn. 175 Minn. 284, 221 N. W. 21. In these cases the determinative question was what constituted doing business by a foreign insurance company. Both cases held that a beneficiary association, with its only office outside the state, which employed no solicitors or other agents in the state, collected dues from members through its own office, and did nothing locally but pay resident members their claims for accrued benefits, was not doing business in the state. The cases do not seem controlling. In

neither of them was there a local organization, set up and established by charter from the foreign corporation, and manned by officers appointed by and responsible to it. Although there is an element of insurance in the case at bar, it is incidental to the main purpose of the organization. By the laws of defendant, each subsidiary lodge is required to maintain a fund supported by a certain portion of local dues for the payment of sick benefits and funeral expenses.

If the defendant were organized for profit there could be no question that it was carrying on business in Minnesota. For a thorough discussion of what constitutes the doing of business, see W. J. Armstrong Co. v. New York C. & H. R. R. Co. 129 Minn. 104, 151 N. W. 917, L. R. A. 1916E, 232, Ann. Cas. 1916E, 335, and Dahl v. Collette, 202 Minn. 544, 279 N. W. 561. Is not the fact that it is engaged in promotion of the purposes for which it was organized, albeit nonprofit business, sufficient "to warrant the inference that the corporation has subjected itself to the jurisdiction and laws" of this state? St. L. S. W. Ry. Co. v. Alexander, 227 U. S. 218, 227, 33 S. Ct. 245, 248, 57 L. ed. 486, Ann. Cas. 1915B, 77; International Harv. Co. v. Kentucky, 234 U. S. 579, 589, 34 S. Ct. 944, 58 L. ed. 1479. The motive behind the activity is not determinative of what constitutes the doing of business. Restatement, Conflict of Laws, § 167, Comment (a):

"Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, *or otherwise accomplishing an object,* * * *." (Italics supplied.)

Defendant's objects are primarily social and charitable. The activity of defendant through its local lodge, Duluth No. 505, is undeniably aimed at the accomplishment of such objects. The establishment of social clubhouses by local units is controlled or sponsored by defendant. Conventions are planned by defendant. Defendant compels part of the dues of each local member to be paid over to it for furtherance of its charitable purposes.

Illustration 11 of the Restatement, Conflict of Laws, § 167, depicts an organization similar to that here involved:

"A is chartered as a corporation in state X to conduct a patriotic, secret, social and benevolent order. Its agents organize local bodies of members in state Y, a portion of the dues of each member going to organizing officials, another portion to the treasury of the corporation. The paraphernalia of members is obtained from the corporation. A is doing business in Y."

Defendant, here, is chartered as a corporation in Indiana to conduct a social and benevolent order. Its agent organized local bodies of members in Minnesota. The organizers, that is, the membership-activities committeemen, are or may be paid salaries. Part of each member's dues is payable to the treasury of the corporation to foster charity. Whether the paraphernalia of members is obtained from the corporation or not does not appear, but defendant's laws provide that upon dissolution of any local unit all paraphernalia, property, and assets shall belong to defendant. It seems inescapable that defendant is doing business in Minnesota. That defendant by its laws denies any agency relationship between local lodges and itself does not overthrow the facts necessarily establishing such relationship. Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 19 S. Ct. 308, 43 L. ed. 569.

The next question is whether Thomas Johnson, District Deputy Supreme Dictator, was an agent of "sufficient rank and character as to make it reasonably certain that the corporation will be notified of the service," D. & R. G. R. Co. v. Roller (9 Cir.) 100 F. 738, 741, 41 C. C. A. 22, 49 L. R. A. 77, and was he one of those agents "as may be properly deemed representatives of the foreign corporation," St. Clair v. Cox, 106 U. S. 350, 356, 1 S. Ct. 354, 360, 27 L. ed. 222. His authority comes from the Supreme Dictator, the chief executive officer of defendant. He is responsible to the Supreme Dictator. He is obviously such an agent as to render it "fair, reasonable and just to imply an authority on the part of the agent to receive service." Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 617, 19 S. Ct. 308, 314, 43 L. ed. 569; W. J. Armstrong Co. v. New York C. & H. R. R. Co. 129 Minn. 104, 151 N. W. 917, L. R. A. 1916E, 232,

Ann. Cas. 1916E, 335. He is an officer of representative capacity, and he exercises derivative authority within our limits. Dahl v. Collette, 202 Minn. 544, 279 N. W. 561.

The order vacating the service of summons and complaint is reversed.