ORRIN S. PIERCE v. GRAND ARMY OF THE REPUBLIC.[1]

November 2, 1945.

No. 34,069.

[1]Reported in 20 N. W. (2d) 489.

*Francis M. Smith* and *James H. Willett,* for appellant.
*A. S. Dowdall,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion to set aside service of summons and complaint.

Defendant, an organization of Union Civil War veterans, dating from shortly after the Civil War, was in 1924 by a special act of congress "created a body corporate and politic of the District of Columbia." The act designated its principal office to be the city of Washington and vested the corporation's controlling authority in the National Encampment, consisting of representatives from the several departments then or thereafter organized. Plaintiff's complaint alleges that, contrary to the statutory charter and the rules and regulations of said corporation, the defendant's commander in chief, acting directly and also through the commander of the Department of Minnesota, has illegally suspended plaintiff as a member and also as commander of George N. Morgan Post of Minneapolis, and has further attempted to revoke and obtain

the surrender of the charter of said post, and plaintiff by his complaint prays for a judgment and decree (1) that he is a member in good standing; (2) that he is the commander of said post; (3) that said post still exists in good standing; and further that a mandatory injunction issue restraining defendant and its officers from committing any further similar acts.

The summons and complaint were served upon defendant "by handing to and leaving with Albert Woolson, state department commander, a true and correct copy thereof" in the city of Duluth. Defendant moved to set aside said service on the specific ground that "said Albert Woolson is not an Officer or Managing Agent of the above named defendant in the State of Minnesota, and is not a person authorized by the Statutes of this State to be served on behalf of the above named defendant, who has no office or place of business within the State and is not doing business within the State of Minnesota." The appeal from the denial of the above motion raised two issues, namely (1) whether defendant was doing business within the state so as to make it amenable to process, and (2) whether the state department commander was a proper agent for service upon the defendant. Defendant in its brief upon appeal alleges that the relief sought by the plaintiff involves the additional issue of whether the courts of this state have visitorial power to examine into the management of the internal affairs of a foreign corporation.

■ The "Grand Army of the Republic * * * is created a body corporate * * * of the District of Columbia" by special act of congress (36 USCA, § 71) and, as such, is a foreign corporation. "It is the general rule that a corporation created by congress in the exercise of its powers as the local legislature for the District of Columbia * * * is a domestic corporation of the District of Columbia * * * and a foreign corporation with respect to the states." 17 Fletcher, Cyc. of Corp. (Perm. ed.) § 8291, and cases cited.

■ The issue involving visitorial power, raised by the defendant for the first time upon appeal, is not before the court for considera-

tion. "Where a motion in the trial court is made and determined on special grounds stated in the notice of motion the moving party will not be heard in the appellate court upon new or additional grounds." 1 Dunnell, Dig. & Supp. § 403; Kessler v. Kruidenier, 174 Minn. 434, 219 N. W. 552; State ex rel. Weide v. District Court, 56 Minn. 56, 57 N. W. 319; Johnson v. Lough, 22 Minn. 203. See, 5 Dunnell, Dig. & Supp. § 7091.

■ Whether a foreign corporation is doing business within the state so as to be amenable to process is, subject to certain general principles, a question of fact according to the circumstances of each case. The principles governing this issue are summarized in High v. Supreme Lodge, 206 Minn. 599, 289 N. W. 519, and Dahl v. Collette, 202 Minn. 544, 548, 279 N. W. 561, 565. The foreign corporation must be found to be present within our jurisdiction. "The test of the presence of a foreign corporation * * * is the nature of the acts done here under its authority." Neither the presence nor absence of a corporation agent, nor the acts or the scope of the authority of the agent served, is controlling in determining corporate presence. It is rather the sum of the manifestations of presence reasonably attributable to the corporation. The inference of corporate presence constituting the doing of business so as to render a foreign corporation amenable to service within the state is to be drawn, not from transactions that are merely incidental, casual, sporadic, or isolated exertions of the corporation's ordinary activities, but from transactions that are of such a regular, systematic, and continuous nature as to establish a course of business sufficient to justify a trial away from its corporate home. "But if the evidence of doing business is otherwise adequate to make a foreign corporation amenable to process, it is a matter of indifferent concern whether or not the quantity of business done within our territory is greater or lesser in amount than the business transacted by it elsewhere." Dahl v. Collette, 202 Minn. 550, 551, 279 N. W. 566, 567, *supra*. In the Dahl case, the court held that although the rule was that the systematic solicitation of business in the regular course of corporate activity,

though of import, was not sufficient by itself to support an inference of "doing business," nevertheless the rule against such inference "readily yields to slight additions."

■ In the instant case, defendant was incorporated with powers "to carry into effect the patriotic, fraternal, and charitable purposes of its organization," subject to the proviso that it "shall not at any time engage in any business for pecuniary profit and gain." 36 USCA, §§ 71, 72. It is immaterial whether a corporation operates a profit or nonprofit business. "The motive behind the activity is not determinative of what constitutes the doing of business." High v. Supreme Lodge, 206 Minn. 602, 289 N. W. 521, *supra.* "Doing business is doing a series of similar acts for the purpose of thereby realizing pecuniary benefit, *or otherwise accomplishing an object * * *."* (Italics supplied.) Restatement, Conflict of Laws, § 167, *comment a.*

It follows that if the defendant was carrying on transactions constituting a regular, systematic, and continuous course of business to accomplish its patriotic, fraternal, and charitable objectives, it was doing business in the state so as to be amenable to process.

No agent authorized to accept service of process under Minn. St. 1941, § 543.08 (Mason St. 1927, § 9231), has ever been appointed by defendant.

5. Before passing on the record before us, we observe that where the affidavits in support of and in opposition to the motion upon which the order from which the appeal is taken was based conflict in certain respects, as appears herein, the view most favorable to the prevailing party in the trial court must be taken. Dahl v. Collette, *supra;* Massee v. Consumers Hay Co. Inc. 184 Minn. 196, 238 N. W. 327.

In the regular course of business over the years, the defendant, acting through the Department of Minnesota and its commander, has collected and received, as part of its regular routine business, department reports and dues. Through the department commander, posts have been organized, charters issued, and orders have been

made and submitted. The very act of incorporation, it should be noted, constitutes the department, the department officers, and the posts through their respective departments the official agencies for carrying on the defendant's activities, subject to the rules and regulations (by-laws of the organization) then existing or to be adopted by the National Encampment. 36 USCA, § 75. Its rules and regulations constitute the department commander a member of the defendant's controlling authority, the National Encampment. It is true that the several departments enjoy a large measure of autonomy with respect to the management and disposition of their respective properties (36 USCA, § 76). Nevertheless, the entire organization by the act of incorporation is closely integrated as a national unit extending into the various states. The National Encampment, for example, aside from any ownership of department or post property, exercises under the charter (36 USCA, §§ 73 and 74) and by virtue of its power to make or amend the rules and regulations practically exclusive control over the entire membership. Clearly, defendant has for many years carried on in Minnesota a regular, systematic, and continuous course of business in effecting the realization of its objectives, and the presence of the defendant, so as to constitute the doing of business, is further confirmed by the exercise of its extraordinary powers in maintaining discipline in this state, first, by action of the National Encampment in 1943, followed by a suspension of the membership of the plaintiff for failing to surrender his post charter and post command, and, secondly, by the National Encampment in 1944 confirming such suspension. These latter acts of discipline, systematically pursued, have provided more than "slight additions" to the manifestations necessary to indicate the doing of business in this state.

■ The next issue is whether Albert Woolson, department commander, "was an agent of 'sufficient rank and character as to make it reasonably certain that the corporation will be notified of the service,' * * * and was he one of those agents 'as may be properly deemed representatives of the foreign corporation' "? High v. Su-

preme Lodge, 206 Minn. 603, 289 N. W. 521, *supra*. There can be no question that he was of sufficient rank and character. By the department's statutory charter, he was its highest agent in the state. 36 USCA, § 75. As department commander, he occupied an exalted position in the Grand Army of the Republic, and by virtue of his office he was a member of the National Encampment, the defendant's supreme controlling authority. Although he was not appointed by defendant's commander in chief, nevertheless his derivative authority as an agent was unmistakably established by defendant's charter and rules and regulations. To say that he is not responsible to the commander in chief, who can order him to be court-martialed, is startling. Few, indeed, are the principals who may wield the club of a court-martial over their agents. Clearly, the department commander is such an agent as to render it "fair, reasonable and just to imply an authority on the part of the agent to receive service." Connecticut Mut. L. Ins. Co. v. Spratley, 172 U. S. 602, 617, 19 S. Ct. 308, 314, 43 L. ed. 569, 574; W. J. Armstrong Co. v. N. Y. C. & H. R. R. Co. 129 Minn. 104, 151 N. W. 917, L. R. A. 1916E, 232, Ann. Cas. 1916E, 335; Dahl v. Collette, 202 Minn. 544, 279 N. W. 561, *supra*. "He is an officer of representative capacity, and he exercises derivative authority within our limits." High v. Supreme Lodge, 206 Minn. 604, 289 N. W. 521, *supra*.

May these valiant soldiers in blue, all past 97 years of age, bury their differences and forget the bitterness of litigation.

Order affirmed.