JEROME J. BLISS v. FRANK W. GRISWOLD AND ANOTHER.[1]

December 6, 1946.

No. 34,198.

[1]Reported in 25 N. W. (2d) 302.

*Leonard, Street & Deinard,* for appellants.
*Ossanna & Kotrich* and *Dwain M. Ewing,* for respondent.

CHRISTIANSON, JUSTICE.

Appeal from an interlocutory order appointing a general receiver of a partnership business formerly conducted by plaintiff and defendant Griswold, which order contained an alternative provision that a receivership of only the partnership books and records would be ordered, with power to take inventory, if, within 24 hours of the service of said order, defendants would file a bond in the sum of $250,000 to secure payment of such amount as would ultimately be decreed to be due plaintiff upon determination of an action for an accounting. The receivership here is being sought in connection with the action for accounting of the partnership business.

The partnership business here involved, for some time prior to the commencement of this action, had been carried on by plaintiff and defendant Griswold under the firm name of Micromatic Metal Products Company for the purpose of manufacturing war materials. The partnership was based upon a written. agreement entered into August 21, 1944, and was to continue to February 28, 1945, it being provided that the partnership might be continued at will after the stated expiration date if the partners both desired, and that upon expiration of the partnership, or extension at will, the partnership should be dissolved and its business wound up in accordance with the laws of Minnesota. The partnership agreement also provided that defendant Griswold was to furnish $10,000 capital for the partnership. Plaintiff was to receive the first $600 per month of the net profits, and all net profits above that sum were to be divided equally between the partners. The books and records of the partnership were to be under the direction and control of defendant Griswold, but were to be open at all reasonable hours for inspection by either partner or his representative. Neither partner was to use the assets of the partnership for any purpose except that of the partnership. It was also provided that the partners were to serve the

partnership faithfully, each "assuming a fiduciary obligation to the other."

Plaintiff's application for a receivership was based upon the allegations of the verified complaint in the accounting action above referred to and accompanying affidavits. Inasmuch as such allegations and affidavits constitute the evidence upon which the court acted in appointing a receiver, the principal allegations therein are here referred to. These are, in effect, that about July 10, 1945, defendant Griswold stated to plaintiff that he wanted to dissolve the partnership and was contemplating the organization of a corporation; that on or about July 15, 1945, Griswold purported to apprise plaintiff of the state of the partnership accounts from its commencement to April 30, 1945, and of the results of the operation of the partnership and the earnings of the respective parties from the partnership operation as of April 30, 1945; that he (Griswold) had organized a corporation which he contemplated would take over the partnership business and that he would submit an offer to plaintiff for plaintiff's interest therein; that on September 15, 1945, Griswold offered plaintiff $45,000 for plaintiff's interest in the partnership business, which plaintiff refused to accept; that on or about July 15, 1945, plaintiff demanded of Griswold a complete accounting of the partnership business, but Griswold failed and has at all times failed and refused to make a complete accounting and disclosure to plaintiff of all the assets and profits of the partnership business; that subsequent to May 7, 1945, plaintiff discovered that Griswold had wrongfully transferred all or substantially all of the partnership assets to a corporation which he had formed, which corporation was named the Micromatic Metal Products Company, now one of the defendants in this action; that after the transfer of such assets to said corporation Griswold continued to represent himself to others as a partner of plaintiff; that Griswold, from the beginning of the partnership, had exclusive control of the books and records of the partnership, and plaintiff relied upon Griswold to maintain accurate records; that plaintiff believed until a short time before the commencement of his action for an accounting that Griswold was keep-

ing honest and accurate records of such business; that Griswold, while a member of the partnership above mentioned, also owned and controlled other enterprises and corporations; that about November 1944 an accountant was instructed by Griswold to prepare some working papers which would show the approximate net profits of the partnership up to December 31, 1944; that the accountant found that such net profits would be approximately $90,000 without taking into consideration any inventory; that in the latter part of May 1945 Griswold requested such accountant to prepare a tentative trial balance covering the period from the beginning of the partnership to April 30, 1945, which trial balance, completed about June 15, 1945, showed that the profits of the partnership up to April 30, 1945, were in excess of $250,000 without considering inventories or scrap; that the inventories, if added, would have been in excess of $100,000 and the scrap referred to would have been in excess of $55,000; that Griswold then advised the accountant that he did not want the partnership to show a profit in excess of $100,000, and instructed him to divert some of the partnership profits to one of the corporations operated by Griswold, stating to the accountant that he did not care what methods were used so long as such result was accomplished; that the accountant, in coöperation with another accountant, eliminated all the items produced by the partnership for such corporation, among which items was one which alone was in excess of $110,000; that the accountants made up an arbitrary list of supplies and tools which had been purchased by the corporation controlled by Griswold and billed the same to the partnership, which partnership had never received the items thus purchased; that the production of eight machines of the partnership was transferred from the partnership records to the records of the Northwest Automatic Products Corporation, one of the numerous enterprises owned and controlled by Griswold; that the production of the eight machines alone was worth in excess of $150,000; that a trial balance was then struck off which still showed a profit in excess of $100,000; that the inventory was set out in the trial balance of April 30, 1945, as $30,000, although actually worth in excess of $200,000; that a

claim for termination of a war contract was reduced $15,000; that scrap metal in excess of $55,000 was altogether eliminated from any of the records of the partnership and was either sold by the Northwest Automatic Products Corporation or by Griswold and the proceeds not credited to the partnership; that after the aforesaid manipulations of the partnership accounts Griswold sought to induce plaintiff to accept $45,000 as payment in full for the latter's half interest in the partnership; that the foregoing offer to purchase plaintiff's interest in the partnership was based upon a false and fraudulent audit of the partnership affairs from the time of its inception up to April 30, 1945, and represented only a small part of plaintiff's interest therein; that on or about September 20, 1945, at plaintiff's request, one Robert E. Larkin, an accountant who had formerly been employed by the partnership and one of the Griswold-controlled corporations and who had been discharged by Griswold, prepared an audit from his records, reconstructing the earnings of the partnership upon a true and correct entry of the figures which had been so manipulated and eliminated by Griswold, with the result that the trial balance thus arrived at shows a net profit on August 30, 1945, of $487,529.19, exclusive of claims for contract termination; that the value of the contract termination claims was not accurately known, but the evidence was to the effect that substantial moneys and profits would be due the partnership therefrom; that plaintiff discovered that Griswold had confused the records of the partnership for the purpose of diverting the assets and funds to Griswold's other enterprises, thereby defrauding plaintiff; that plaintiff discovered that the inventories of materials belonging to the partnership of the approximate value of $200,000 were being sold by Griswold or were being used by companies which he owned and controlled without any record being made thereof or without due compensation being paid to the partnership; that Griswold further manipulated and diverted the assets of the partnership to other enterprises controlled by him, in that on October 1, 1945, 71 employes were on the payroll of the partnership, when in fact only ten of such employes were actually working for the partnership, while the

other 61 of such employees were working for other enterprises belonging to and controlled by Griswold; that two trial balances of defendant corporation of which plaintiff accidentally gained possession, one of August 31, 1945, and the other of September 30, 1945, indicate a depletion of the cash of defendant corporation from $272,744.69 to $67,917.71 between August 31, 1945, and September 30, 1945, without any corresponding increase in the assets of defendant corporation; that the cash and assets as shown on the trial balances of defendant corporation represent assets of the partnership; that the cash and assets so transferred from defendant corporation represent funds of the partnership which were being dissipated by Griswold through the medium of defendant corporation.

The foregoing allegations were all denied by defendants in their answers and in counteraffidavits, except that Griswold's answer did admit a transfer of partnership assets to defendant corporation, which Griswold asserts was done pursuant to an understanding with plaintiff.

After a number of appearances and hearings relative to the application for receivership, a full and final hearing was had with respect to the application. It appears that Griswold strenuously contested the application for receivership at the time of the final hearing thereon on November 15, 1945. After such hearing, the court made its order appointing a receiver of all the assets and property of the partnership, with the usual powers. Such order, however, contained an alternative provision that the receivership would be limited only to the books and records of the partnership and the taking of an inventory if defendants would furnish a bond conditioned to pay all amounts that might be found to be due plaintiff upon the accounting sought in the principal action. The bond was to be furnished within 24 hours after service of the alternative order.

Within 24 hours after service of the order defendants did furnish and file bond. Defendants now appeal from the order and the whole thereof, contending, first, that the court erred in requiring them to give a bond in the amount of $250,000 within 24 hours after

service of the order as an alternative to an immediately effective general receivership. They assert that the order is not supported in whole or in part by stipulation or assent. They further contend that the penal sum of the bond is grossly excessive and was fixed by the court without first affording defendants an opportunity to be heard as to what would be a reasonable sum; that the requirement that the bond be filed within 24 hours unjustly and unreasonably deprived defendants of such a stay as would have enabled them to apply for modification of the order or to appeal from it without first giving the bond or suffering a general receivership; and that the court erroneously and inseparably coupled with the provision for a bond provisions for a receivership over the firm's books and records and for the taking by the receiver of an inventory of the assets not coming into his possession. Defendants further claim that the order as a whole and in each of its parts is erroneous because not based' upon findings of fact as raised by the pleadings and accompanying affidavits, because defendants did not assent to the order and because there was no evidence in support of such findings and' conclusions of law as would sustain a general receivership or the alternative provision for a bond and limited receivership.

Before proceeding with a determination of the merits of defendants' appeal, we must consider whether they have a right of appeal. Plaintiff contends that the right has been waived by defendants, first, because they requested the alternative provision in the order for a limited receivership and the right to file a bond in connection therewith, and, second, because defendants accepted the benefits of the order made. As to the first objection, which is that defendants have waived their right of appeal by requesting the limited receivership, which was granted, we do not believe that this contention is sustained by the record. It is true that the record shows that on a number of occasions in the course of the proceedings leading up to the making of the order in question defendants suggested the filing of a bond in lieu of submitting to the general receivership, but it also appears that before the final hearing on the application for receivership defendants withdrew all suggestions

for a general or limited receivership. Under the circumstances, the first objection raised by plaintiff to the validity of the appeal must be declared to be without merit.

As to the second argument against the right of appeal, which is that by filing a bond and submitting to a limited receivership in lieu of submitting to a general receivership defendants have accepted the benefits of the order and therefore have waived the right of appeal therefrom, we also must find this contention to be without merit.

While it is generally held that one who receives the benefits of a judgment or order cannot attack such order or judgment by appeal, the choice of the less onerous of two conditions or burdens imposed in the alternative by an order cannot be said to be an acceptance of the benefits of an order within the contemplation of the rule above stated. To this effect, see State v. Conkling, 54 Kan. 108, 37 P. 992, 45 A. S. R. 270; Yellowstone Sheep Co. v. Ellis, 55 Wyo. 63, 96 P. (2d) 895; Alamitos Land Co. v. Shell Oil Co. 217 Cal. 213, 17 P. (2d) 998. Accordingly, we hold that defendants have not waived their right to appeal in this matter and that they are entitled to have the proceedings reviewed.

We are then confronted with the question whether the trial court abused its discretion in making the order here complained of. It is the general rule that the appointment of a receiver is discretionary with the court. This means little more than that the power of appointment is to be exercised with reference to the facts of the particular case and in furtherance of justice. 5 Dunnell, Dig. & Supp. § 8248, and cases cited.

The evidence hereinbefore alluded to consists of a series of specific charges of fraud, deceit, and misappropriation of the partnership assets by Griswold, who held control and possession of the partnership assets and records. This evidence amply establishes the existence of a situation showing plaintiff to be in imminent danger of serious loss and injury. While it is true that Griswold has denied the charges upon which the application for receivership was made, we must here apply the rule that a view of the evidence most favor-

able to the prevailing party must be adopted. Pierce v. Grand Army of the Republic, 220 Minn. 552, 20 N. W. (2d) 489; Dahl v. Collette, 202 Minn. 544, 279 N. W. 561; Massee v. Consumers Hay Co. Inc. 184 Minn. 196, 238 N. W. 327. Taking, then, such a view of the evidence, we are impelled to the view that the order of the trial court is amply sustained by the evidence and was proper.

■ We do not agree with the claim of defendants that the amount of the bond here required was excessive. The court had before it evidence to the effect that the assets involved in this litigation were worth not less than $487,529.19, exclusive of war contract termination claims, the amount of which claims, according to the evidence, was considerable. Inasmuch as plaintiff is claiming one-half of all assets of the partnership business, it cannot be said that the amount of the bond as required was excessive.

■ Defendants' contention that it was unreasonable to require the bond to be furnished within 24 hours after service of the order appointing the receiver is, in our opinion, without merit, since the bond was in fact furnished within the time fixed. There is very little force in defendants' contention that an opportunity should have been given to contest the amount of the bond as fixed. The court already had before it the evidence of the parties as to the value of the assets involved, and, as hereinbefore stated, it also had before it as a basis for fixing the bond at $250,000 evidence that the assets involved were worth $487,529.19, exclusive of war contract termination claims, which, as we have stated, were of considerable amount.

■ We do not consider as tenable the position of defendants that it was improper for the court to authorize the receiver to take an inventory of the assets not coming into his possession.

Generally stated, the purpose of a limited receivership such as was here created and the giving of bond in connection therewith is to insure the protection and preservation of the partnership assets pending the action of accounting. Surely, such purpose can be more intelligently effectuated if it is accurately ascertained as soon as possible what the assets are. That is the purpose of an inventory.

We therefore hold that the authority to take such inventory was a proper incident of the limited receivership here created.

■ The contention of defendants that findings of fact were not made by the trial court is not fatal to the court's order. This court has repeatedly held that interlocutory orders need not be based upon findings of fact. Minneapolis Trust Co. v. Menage, 86 Minn. 1, 90 N. W. 3; Sjoberg v. Security S. & L. Assn. 73 Minn. 203, 75 N. W. 1116, 72 A. S. R. 616; Fryberger v. Anderson, 125 Minn. 322, 147 N. W. 107; Wildner v. Ferguson, 42 Minn. 112, 43 N. W. 794, 6 L. R. A. 338, 18 A. S. R. 495; Wells v. Penfield, 70 Minn. 66, 72 N. W. 816.

The order appealed from is affirmed.

